# EXHIBIT 1

**IN THE CIRCUIT COURT OF THE TENTH JUDICIAL CIRCUIT**
**IN AND FOR POLK COUNTY, FLORIDA**

GEORGE ZIMMERMAN,
Polk County, FL

               Plaintiff,

v.

PETE BUTTIGIEG,
Fort Wayne, IN

      and                                        **COMPLAINT**

ELIZABETH WARREN,
Washington DC

               Defendants.

## I.    INTRODUCTION

1.    Plaintiff George Zimmerman ("Zimmerman") brings this action against Pete Buttigieg ("Buttigieg") and Elizabeth Warren ("Warren") in their individual capacities for defamation with actual malice or at a minimum a reckless disregard for the truth. Both Defendant Buttigieg and Defendant Warren individually defamed and disparaged Plaintiff Zimmerman in separate postings on their Twitter accounts on February 5, 2020. Defendant Buttigieg and Defendant Warren defamed Zimmerman for political gain in misguided and malicious attempts to bolster their standings amongst African-American voters, all at Zimmerman's expense.

## II.    JURISDICTION AND VENUE

2.    This is an action for damages in excess of $15,000.00 exclusive of interest, costs and attorneys' fees.

3.      Venue is proper in Polk County, Florida, as Plaintiff Zimmerman is a resident of this county and judicial circuit and a citizen of Florida.

### III.    PARTIES

4.      George Zimmerman ("Zimmerman") or ("Plaintiff") is an individual, natural person, who at all material times was and is a natural citizen  of the state of Florida, residing in this circuit.

5.      Pete Buttigieg ("Buttigieg") is an American politician, a former mayor of South Bend, Indiana and a 2020 candidate for the Democrat Party nomination for President of the United States of America. Defendant Buttigieg has 1,600,000 Twitter followers. He tweets multiple times per day for the purposes of informing the public and his followers, obtaining media coverage, and building political support. Defendant Buttigieg's tweets are widely covered in the national and international media, and in particular in the state of Florida, which is the third largest state and crucial to win the 2020 presidential Democrat primary and general presidential election.  Defendant Buttigieg won the recent Iowa Caucus and is currently a leading candidate for the Democrat party nomination. Defendant Buttigieg has received heavy criticism from black activists for poor record as regards the black community.  Defendant Buttigieg has been called out for the sharp increase in arrests of African Americans when he became Mayor of South Bend, his controversial firing and demoting of a black police chief, and for his comments in a speech in 2015 in which he stated that "all lives matter" as a response to the "Black Lives Matter" slogan and movement. Defendant Buttigieg has disingenuously apologized repeatedly for all three of these actions, and has expressed concern over the well-documented lack of electoral support for his candidacy amongst African American voters in polling.

6.      Elizabeth Warren ("Warren") has been a nationally known political figure in the United States since becoming a U.S. Senator representing Massachusetts in 2013. Warren is currently also a 2020 candidate for the Democrat Party nomination for President of the United States of America. Defendant Warren has 3,600,000 Twitter followers. Defendant Warren tweets multiple times per day for the purposes of informing the public and her followers, obtaining media coverage, and building political support, particularly in the state of Florida, the third largest state and which is crucial to win the 2020 Democrat presidential primary and the general presidential election.   Defendant Warren's tweets are widely covered in the national and international media. Defendant Warren often appeals for the support of African-American voters, a significant voting block. Defendant Warren also lacks significant African-American support, which she has stated she is seeking to support her candidacy which appears to be fading from its previous popularity. Defendant Warren recently admitted that her campaign has mistreated African-American staffers in her campaign organization in Nevada, and that she personally disingenuously apologized to the staffers for the "systemic racism" that infected her campaign.

## IV.   STANDING

7.      Plaintiff George Zimmerman ("Zimmerman") has standing to bring this action because he has been directly affected, harmed, and victimized by the unlawful conduct complained herein which occurred in this circuit and where he resides. His injuries are proximately related to the conduct of Defendant Buttigieg and Defendant Warren.

## V.   FACTS

8.      On February 5, 2020, Defendant Buttigieg posted a Tweet to his 1,600,000 Twitter followers (Exhibit 1): *Trayvon Martin would have been 25 today. How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?*

*#BlackLivesMatter.* In only 3 days, Defendant Buttigieg's Tweet received 42,000 likes, 13,300 replies, and 6,600 retweets. This Tweet received national media coverage as well, and in particular in the state of Florida, including but not limited to Polk County.

9.      On February 5, 2020, Defendant Warren posted a Tweet to her 3,600,000 Twitter followers (Exhibit 2): *My heart goes out to @SybrinaFulton and Trayvon's family and friends. He should still be with us today. We need to end gun violence and racism. And we need to build a world where all of our children—especially young Black boys—can grow up safe and free.* Defendant Warren's Tweet also included a retweet of four photos of Trayvon Martin as a small child, between the ages of 4 to 10 years old. In only 3 days, Defendant Warren's Tweet received 7,300 likes and 1,000 retweets. Defendant Warren's Tweet received national media coverage, and in particular in the state of Florida, and thus in Polk County.

### Background

10.      In February 2012, Zimmerman was 29 years old, married, and living at the Retreat at Twin Lakes townhome complex in Sanford, Florida. He was working as a forensic fraud underwriter for Digital Risk and attending Seminole Community College. Zimmerman was studying Political Science/Criminal Justice on a path to becoming an attorney. In his spare time, Zimmerman was a social activist and minority advocate. He had led a community-wide effort to seek justice for Sherman Ware, a homeless black man who was attacked by the son of a white police officer. Zimmerman was also acting as a mentor in a program for African American teens whose parents were in prison. After a rash of robberies and home invasions at the Retreat at Twin Lakes townhome community where he lived, Zimmerman joined the neighborhood watch program.

11.     In February 2012, 17-year-old Trayvon Martin ("Trayvon") was living with his mother Sybrina Fulton in Miami. Trayvon was often getting into fights at Michael Krop High School and was suspended 3 times. In text messages to a friend, Trayvon lamented only breaking the nose of a student whom he had fought because "he snitched on me" and insisted he would fight the student again because "he ain't bleed enough for me." An expulsion hearing was set for Trayvon after he tried to hit a bus driver. Trayvon's text messages indicated he was dealing handguns to his underage friends, and that he was a heavy marijuana user. During this time, Trayvon self-identified as a gangster and used a Twitter handle that indicated affiliation with a Miami street gang.

12.     In February 2012, 16-year-old Brittany Diamond Eugene ("Eugene") was a sophomore at Miramar High School. In early February 2012, Eugene and Trayvon began a romantic relationship. They spoke on the phone for an average of 5 hours per day and exchanged about 50 text messages each day. Text messages indicate the relationship was loving and sexual. Eugene is the half-sister of Rachel Jeantel ("Jeantel"), they share the same biological mother, Marie Eugene, but grew up in different homes. In February 2012, Jeantel was an 18-year-old ninth grader at Miami Norland Senior High School. Jeantel was in the ESE (Exceptional Student Education) Program because she was reading on a 4th grade level and had failed two years of school. Jeantel was one year older and 120 pounds heavier than Trayvon.

13.     After Trayvon's third suspension from school in mid-February 2012, rather than supervise him at home, Trayvon's mother, Sybrina Fulton, "kicked him out" according to Trayvon's text messages, and Trayvon took a bus to stay with his father, Tracy, in Sanford, Florida.

14.     On February 26, 2012, having slept little the night before due to marijuana use and partying with his cousin, Trayvon spent much of the day speaking on the phone and texting with Eugene who was in Miami. Trayvon was speaking with Eugene both before and after he exited a 7-11 mini market at approximately 6:30 PM in the evening of February 26, 2012. While driving to Target at around 7:09 PM, Zimmerman spotted Trayvon standing in the rain between two townhomes and making no attempt to get out of the rain. Zimmerman pulled over and called the non-emergency number of the Sanford police to report a suspicious person, as the neighborhood watch group members had been advised to do. Trayvon, while still on the phone with Eugene, then approached and circled Zimmerman's parked car while Zimmerman was still speaking to the dispatcher. Zimmerman described Trayvon to the dispatcher as looking like he was "on drugs or something" (Trayvon was later found to have marijuana in his system above the legal limit to drive in most states). Then, while still on the phone with Eugene, Trayvon departed the area of Zimmerman's car, which Zimmerman also reported to the dispatcher. The dispatcher repeatedly asked Zimmerman which way the person had gone, prompting Zimmerman to get out of his car to try to assist the dispatcher. Not having seen Trayvon at all during the next four minutes, and after failing to find a street address to give the dispatcher where a police officer could meet him, Zimmerman asked the dispatcher to tell the officer to meet him back at his parked car. Zimmerman then walked toward his parked car, and almost there, Trayvon appeared and approached Zimmerman from behind, and called out, "What's your problem?". As Zimmerman answered "I don't have a problem" Trayvon immediately sucker-punched Zimmerman in the nose, breaking it, and straddled him as he fell to the ground. Trayvon then began slamming Zimmerman's head onto the concrete sidewalk and tried to smother Zimmerman as he yelled for help at least 14 times according to 911 audio recordings. Trayvon

was also raining down blows on Zimmerman "MMA Style" according to eyewitness Jonathan Good ("Good") who, hearing the disturbance, came out of his neighboring townhome and shouted at Trayvon to stop the assault or he would call the police. Trayvon did not stop the assault on Zimmerman, so Good retreated back into his townhome to call police. Zimmerman was disoriented and choking on blood from his broken nose. Fearing he would go unconscious from the continued bashing of his head onto the concrete sidewalk, he reached for his legal firearm and discharged a single shot to stop the assault. Trayvon requested of Zimmerman, "tell Mama 'Licia I'm sorry," referring to his stepmother Alicia Stanley.

15.     On March 12, 2012, George Zimmerman was exonerated of any wrongdoing after a thorough investigation by the Sanford Police Department. Sanford Florida Police Chief Bill Lee explained at a press conference that the Sanford police investigation had included extensive interviews with Zimmerman (without an attorney present), eye-witness Johnathon Good, numerous Retreat at Twin Lakes residents, reviews of 911 calls, examination of the physical evidence of Zimmerman's broken nose and head lacerations and Trayvon's bruised knuckles, and the location of the altercation. Lee declared that the investigation concluded the shooting was an act of self-defense and there were no grounds to arrest Zimmerman. It was not even a stand your ground case.

16.     Eight days later, on March 20, 2012, a mysterious "phone witness" was introduced by way of voice recorder to the public at a press conference by Martin family attorney Benjamin Crump ("Crump"). Crump claimed that 16-year-old Eugene was Trayvon Martin's girlfriend and that what she had heard over the phone was all the evidence needed to arrest and convict George Zimmerman of murder. The state of Florida then appointed a Special Prosecutor who came to Miami on April 2, 2012 to interview Eugene. However, after arriving at Eugene's

home in Miramar, they were directed to pick up Eugene at the home of a woman who had worked for Trayvon's mother. That's when 18-year-old Rachel Jeantel, Eugene's half-sister, appeared and she claimed that she was Trayvon's girlfriend, and that her nickname was "Diamond Eugene." Jeantel made many false claims to prosecutors and incriminated Zimmerman as the aggressor in the altercation with Trayvon. Prosecutors chose to believe Jeantel, despite her contradicting of all the eyewitnesses and physical evidence, and Jeantel's statements were used to form an affidavit of probable cause for Zimmerman's arrest and charges for second-degree murder.

17.    On July 13, 2013, Zimmerman was acquitted of all charges. Despite this, Zimmerman and his family have been the target of death threats ever since. Today, Zimmerman still lives in constant fear of physical harm to himself and his family due to the death threats, which appear in rap music as well as online social media commentary. In 2015, a man named Matthew Apperson attempted to murder Zimmerman by shooting a bullet at him that missed his head by inches. Apperson was sentenced to 20 years in prison. On December 19, 2019, Rapper Roddy Ricch's rap song entitled "The Box" hit number one on the Billboard 200 chart and included lyrics indicating he had put a $100,000 bounty on Zimmerman's life.

18.    Also in 2013, the Black Lives Matter ("BLM") vigilante group was formed, according to its website, "in response to the acquittal of Trayvon Martin's murderer, George Zimmerman." BLM members have since that time regularly in public and on social media called for the murder of Zimmerman and have threatened his family. BLM is also known for organizing protests against the police that have included chants calling for "dead cops." Six police officers were murdered during a Black Lives Matter rally in Dallas in 2016.

19.     On September 16, 2019, a film and book of the same name, *The Trayvon Hoax: Unmasking the Witness Fraud that Divided America,* were released for sale by Hollywood filmmaker and author Joel Gilbert ("Gilbert"). Gilbert held a press conference and film screening of the movie at the National Press Club in Washington DC which was covered nationally. *The Trayvon Hoax: Unmasking the Witness Fraud that Divided America* laid out massive evidence from Trayvon Martin's cell phone data and other public records that conclusively demonstrated that the prosecution's key witness, Rachel Jeantel, was an imposter and fake witness, and that Jeantel was not Trayvon's girlfriend and not on the phone with him in the days and minutes prior to his death as she claimed. The film and book proved that in fact Trayvon Martin's real girlfriend and real "phone witness" was Miami resident and then 16-year-old Brittany Diamond Eugene, whom had met with Trayvon's mother Sybrina Fulton and personally given her a letter signed by her. Gilbert detailed how Eugene was coerced into making incriminating statements in the recorded phone call with Martin family attorney Crump, but then refused to bear false witness against George Zimmerman to Florida State prosecutors. The film and book also detailed how and when Jeantel, who is Eugene's half-sister, was substituted into to the case to pretend to be Eugene in order to get Zimmerman arrested, charged with murder, and sent to prison for life. Sybrina Fulton is proven to have known about the witness switch, as are others.

20.     On December 5, 2019, George Zimmerman filed a lawsuit in Polk County, Florida (Case number: 2019CA004884000000) for $100 million in civil damages for defamation, abuse of civil process and conspiracy against Sybrina Fulton, Tracy Martin, Benjamin Crump, Rachel Jeantel, Brittany Diamond Eugene, the FDLE, Bernie de la Rionda, John Guy, Angela Corey and the State of Florida that garnered national and international media coverage. The lawsuit alleges that all these parties conspired in the witness switch from Eugene to Jeantel, and

9

that Jeantel was coached by the Martin family, their attorney Crump, and Eugene, and that state prosecutors knew or should have known this as well. Zimmerman's lawsuit garnered national and international media coverage including on network newscasts such as ABC, CBS, and NBC, as well as The Today Show and in virtually every newspaper and online media source including The Washington Post, New York Times, Daily Mail, Rolling Stone, USA Today, Associated Press, The New York Post, and hundreds of others. Defendants Buttigieg and Warren most assuredly heard and read about this lawsuit and the underlying facts of the lawsuit, which included but were not limited to his acquittal.

21.     Defendant Buttigieg is very knowledgeable of the facts surrounding the 2012 incident in Sanford, Florida in which Trayvon Martin died, as is the American public. The name "George Zimmerman" is 100% synonymous with Trayvon Martin and the incident that resulted in the death of Trayvon Martin due to the massive publicity after the shooting, the nationwide protests demanding Zimmerman's arrest without cause, the subsequent 2013 Zimmerman trial and his acquittal of all charges, and the acts of protest and violence that continue to this day in the name of Trayvon Martin. Defendant Buttigieg was himself involved in the protests, appearing at a "Million Hoodie March" in South Bend, Indiana on March 29, 2012 wearing a hoodie and speaking to the crowd.

22.     In his February 5, 2020 Tweet that defamed Zimmerman, Defendant Buttigieg, after referring to Trayvon Martin's death by stating *"Trayvon Martin would have been 25 today"* he then wrote in his Tweet, *"How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?"* In these statements, Defendant Buttigieg recklessly implied that Trayvon Martin's death was a result of *"white supremacy, gun violence, prejudice, and fear,"* all of which refer to Zimmerman and the public would understand as

10

referring only to George Zimmerman, who is known to have caused Trayvon's death by shooting him. Specifically, Defendant Buttigieg's: 1) use of the term "*white supremacy*" - Defendant Buttigieg defamed Zimmerman by claiming without any basis whatsoever that the Hispanic minority advocate and Obama supporter Zimmerman shot Trayvon Martin in cold blood due to his "*white supremacy*," a racist cause that is held in great disdain and consternation by the public, 2) use of the term "*gun violence*" - Defendant Buttigieg falsely portrayed Trayvon Martin's death as being a result of "*gun violence*" and by implication that Zimmerman had engaged in "*gun violence*" which is, at a minimum, generally understood in the public arena to refer to the reckless and indiscriminate use of illegally owned firearms that causes the death of random innocent victims. In fact, as chronicled in the 2013 Zimmerman trial and well covered in the media, George Zimmerman was the victim of an unprovoked attack and was receiving a relentless beating that was causing him severe injuries when he eventually fired a single shot from a legally owned firearm to stop the attack to save his life. There was nothing about Zimmerman's act of self-defense that could fit the public understanding of someone engaging in "*gun violence*" as Defendant Buttigieg implied of Zimmerman. In fact, Defendant Buttigieg knows that the 2013 trial jury acquitted Zimmerman of all charges based on the well-publicized evidence that Zimmerman had a registered legal weapon, had fired a single shot to stop an attacker in self-defense after absorbing many potentially fatal  blows and injuries, after screaming repeatedly for help for some time, and only after eyewitness Jonathan Good shouted at Trayvon Martin to stop the attack or he would call the police and Martin continuing his attack on Zimmerman anyway. Therefore, Defendant Buttigieg's attributing the death of Trayvon Martin to "*gun violence*" disparages and defames Zimmerman, 3) use of the term "*prejudice*" - Defendant Buttigieg's use of the word  "*prejudice*" as having contributed to the death of Trayvon

Martin is a smear that disparages and defames Zimmerman, a man who is Hispanic, a minority advocate, and an Obama supporter, by implying Zimmerman fired a weapon out of "*prejudice*" which is also thought of as "racism" or hate of someone's race or skin color, rather than self-defense as was the well documented case that Defendant Buttigieg was well aware of, 4) Use of the term "*fear*" - Defendant Buttigieg's remark about "*fear*" in its context of Trayvon Martin's death implies racism on the part of Zimmerman as regards Trayvon Martin's skin color, and implies that Zimmerman shot Martin out of "*fear*" of his skin color or race, essentially that Zimmerman is racist. The only "*fear*" Zimmerman experienced, as established in the 2013 trial and well-covered in the media, was in the context of Zimmerman believing he might go unconscious and die from the repeated beating of his head against the sidewalk pavement or by choking to death from the blood going down his throat due to his broken nose during the beating by Martin, and Martin's refusal to stop the attack despite eyewitness Johnathon Good's threat to call the police and, 5) use of the hashtag "*#BlackLivesMatter*" - Defendant Buttigieg's signing off of his Tweet with "*#BlackLivesMatter*" was another direct reference to George Zimmerman, as the BLM group is known to have been founded based on Zimmerman's acquittal, and its members have regularly called for vigilant-style violence against Zimmerman and his family. Defendant Buttigieg's writing "*#BlackLivesMatter*" *on* his post referring to Trayvon Martin's death was intended to remind his followers and the public of Zimmerman being a target for hate, and labels Zimmerman as the person who had killed Trayvon Martin because of Zimmerman's "*white supremacy, gun violence, prejudice, and fear*" which defames and disparages Zimmerman.

23.     Defendant Warren is also very knowledgeable of the facts surrounding the 2012 incident in Sanford, Florida in which Trayvon Martin died, as is the American public. The name

"George Zimmerman" is 100% synonymous with the incident that resulted in the death of Trayvon Martin due to the massive publicity after the shooting, the nationwide protests demanding Zimmerman's arrest without cause, and the subsequent 2013 Zimmerman trial and his acquittal of all charges. On February 5, 2020, Defendant Warren posted a Tweet to her 3,600,000 Twitter followers (Exhibit 2): *My heart goes out to @SybrinaFulton and Trayvon's family and friends. He should still be with us today. We need to end gun violence and racism. And we need to build a world where all of our children—especially young Black boys—can grow up safe and free.* Defendant Warren's Tweet also included a retweet of four photos of a small Trayvon Martin aged between 4 and 10 years old, which was willfully per se false and deceptive.

24.     Defendant Warren defamed Plaintiff Zimmerman as follows: 1) Use of the phrase "*He should still be with us today*" was a set up for the defamation that followed, as it implied that Trayvon Martin is not alive due to "*gun violence and racism,*" 2) Use of the term "*gun violence*" - Defendant Warren falsely portrayed Trayvon Martin's death as being a result of "*gun violence*" and by implication that Zimmerman had engaged in "*gun violence*" which is generally understood in the public arena to refer to the reckless and indiscriminate use of illegally owned firearms that causes the death of a random innocent victim. In fact, as chronicled in the 2013 Zimmerman trial and well-covered in the media, George Zimmerman was the victim of an unprovoked attack and was receiving a relentless beating that was causing him severe and potentially fatal injuries when he fired a single shot from a registered and legally owned firearm to stop the attack. There was nothing about Zimmerman's act of self-defense that can be understood as "*gun violence*" as Defendant Warren wrote of Zimmerman. In fact, the 2013 trial jury acquitted Zimmerman of all charges based on the evidence that Zimmerman had a registered legal weapon, had fired a single shot to stop an attacker out of self-defense after absorbing many

blows and injuries, after screaming repeatedly for help for some time, and only after eyewitness Jonathan Good shouted at Trayvon Martin to stop the attack or he would call the police and Martin continuing his attack on Zimmerman anyway. Therefore, Defendant Warren's attributing the death of Trayvon Martin to "*gun violence*" disparages and defames Zimmerman, 2) Use of the term "*racism*" - Defendant Warren's use of the word "*racism*" as having caused the death of Trayvon Martin is a smear that disparages and defames Zimmerman, a man who is Hispanic, a minority advocate, and an Obama supporter, by implying Zimmerman fired a weapon and that Trayvon Martin is not "with us" due to "*racism*" which is a form of hate and abhorred by the public, rather than self-defense as was the case. Defendant Warren knows that as established in the 2013 trial and in the media, that Zimmerman fired a single shot only because he believed he might go unconscious and die from the repeated beating of his head against the sidewalk pavement or by choking to death from the blood going down his throat due to his broken nose during the beating by Martin, and Martin's refusal to stop the attack despite eyewitness Johnathon Good's threat to call the police, and 3) Defendant Warren's posted Tweet included a false and deceptive retweet of four photos of Trayvon Martin as a small child between the ages of 4 to 10 years old. By Defendant Warren's including multiple images of Trayvon Martin as a small child along the context of her claims that Trayvon Martin was not with us due to "*gun violence and racism*"*,* she further defames and disparages Zimmerman by promoting the false idea he had killed an innocent small child due to his "*gun violence and racism,*" rather than the true facts that she knew, that Trayvon Martin was over 6 feet tall and was engaging in an unprovoked and sustained physical and potentially fatal attack on George Zimmerman that caused Zimmerman to eventually fire a single shot in self-defense to save his life.

### Defendants Acted with Actual Malice

25.     Defendants, each of them, jointly and severally, and individually, acted with actual malice when they tweeted the defamatory statements because they knew or had reason to know that what they published was false or entertained serious doubts as to the truth of what they published.

26.     Defendants are world-renowned, sophisticated politicians running for the office of President of the United States of America. They know what is true or have reason to know what is false and misleading.

27.     Defendants, each of them, jointly and severally, and individually, acted with actual malice because they intentionally avoided learning the truth and entertained serious doubts as to the truth of their tweets.

28.     Defendants, each of them, jointly and severally, and individually, acted with actual malice because they were subjectively aware that the tweets were fabricated in large part as set forth above as they were not corroborated by anyone. Defendants intentionally wanted to harm Plaintiff Zimmerman.

29.     Defendants, each of them, jointly and severally, and individually, acted with actual malice because what was tweeted was inherently improbable such that only a reckless person would have put it in circulation.

30.     Defendants, each of them, jointly and severally, and individually, purposefully avoided the truth because, among other reasons to be disclosed further in discovery, they were part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Zimmerman's reputation and profession.

31.     The defamatory tweets are not an account of two sides of an issue that raises questions in a reader's mind. They are evidence of not only a reckless disregard of the truth but

also of common law malice (ill-will or dislike) because Defendants intentionally desired to "get" Plaintiff Zimmerman and "muckrake" him.

32.     Because the actual malice inquiry focuses on Defendants' state of mind at the time of tweets, Plaintiff Zimmerman must rely on inferences from circumstantial evidence.

33.     Circumstantial evidence here that is alleged to indicate actual malice includes but is not limited to: (1) the failure to investigate seriously false allegations; (2) the failure to seek comment from Plaintiff Zimmerman or his lay or legal representatives; (3) the hostility, anger and retaliation to "get" Plaintiff Zimmerman; (4) Defendants' sensationalism and "muckraking"; (5) Defendants' preconceived plan to discredit and destroy Plaintiff Zimmerman as part of their political agenda to garner votes in the black community in particular before the 2020 election; (6) Defendants' preconceived view or slant; (7) other statements and publications about Plaintiff Zimmerman, including but not limited to his 2013 acquittal; and (7) ill-will or hostility that Defendants' harbor for Plaintiff Zimmerman.

34.     Before any motion to dismiss can even be considered – even were this applicable which it is not here --   Plaintiff Zimmerman is entitled to discovery on Defendants' inner workings in order to prove actual malice. *Herbert v. Lando*, 441 U.S. 153 (1979); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25 (D.D.C. 2002) (permitting discovery before ruling on actual malice).

35.     Defendants published the tweets with actual malice by making a calculated decision not to verify their tweets because they knew or had reason to know they were false and misleading, but wanted to maliciously publish them anyway as it suited their  political agendas.

36.     Defendants published the defamatory tweets with actual malice by purposefully avoiding interviewing anyone who could contradict their story and that would have contradicted Defendants' preconceived storyline.

37.     Defendants published the defamatory tweets with actual malice when they failed to request a comment from Plaintiff Zimmerman or his lay or legal representatives even though they knew their tweets would be contradicted.

38.     Defendants published the defamatory tweets with actual malice by making a calculated decision not to seek meaningful comment from anyone who could provide a different perspective of their false narrative.

39.     Defendants published the defamatory tweets with actual malice by failing to interview anyone concerning their tweets.

40.     Defendants published the defamatory tweets with actual malice by falsifying facts in an effort to bolster the credibility of their own false story.

41.     At a minimum, Defendants had or should have had serious doubts as to the truth of the statements in the defamatory tweets and a high degree of awareness that they were probably false and therefore were required to investigate their veracity before publishing them. Defendants' failure to do so amounts to actual malice. Defendants purposefully avoided the truth, and purposefully avoided interviewing sources and following fundamental practices intentionally in order to avoid the truth.

42.     At the time of the defamatory tweets' publication, Defendants knew that their statements were false, or recklessly disregarded the truth.

43.     Plaintiff has demanded a retraction of both of Defendants' tweets, published nationally and internationally and in Polk County in the state of Florida, and Defendants have refused and failed to even respond to Plaintiff's demands.

## FIRST CAUSE OF ACTION
### General Defamation
### Defendants Buttigieg and Warren

44.     Plaintiff Zimmerman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

45.     Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Zimmerman by knowingly, intentionally, willfully, and recklessly publishing statements about him which they knew or should have known to be false and misleading and/or were published with reckless disregard for the truth.

46.     Defendants' defamatory tweets were not privileged in any way or manner.

47.     To establish general defamation, a plaintiff need only show that a person or entity (1) published a false statement of fact; (2) about another person; (3) to a third party; and (4) the falsity of the statement caused injury to the other person.

48.     The false, defamatory and misleading tweets about Plaintiff Zimmerman were published and the falsity of the statements caused injury to him.

49.     Defendants knew or had reason to know that their tweets were false and misleading and/or published with a reckless disregard for the truth.

50.     The false impression of Plaintiff Zimmerman, which Defendants created, caused irreparable harm to him, his business and person and his calling, as well as to his good will and reputation, as well as harmed his family.

51.     Defendants published false, misleading slanderous, defamatory statements to severely harm and damage Plaintiff Zimmerman on their public Twitter posts on February 5, 2020.

52.     These false, misleading and defamatory statements were disseminated on the Internet to the public and directly to millions of their followers, and republished for persons in this circuit and the entire world to see and hear. These false, misleading and defamatory tweets were further disseminated  by thousands of "retweets" and "likes" by thousands of their followers and others and covered by the media, which was the intent of their postings and publications.

## SECOND CAUSE OF ACTION
### Defamation by Implication
### Defendants Buttigieg and Warren

53.     Plaintiff Zimmerman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

54.     Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Zimmerman by knowingly, intentionally, willfully, and recklessly publishing statements about him which they knew or should have known to be false and misleading.

55.     Defendants' defamatory tweets were not privileged in any way or manner.

56.     Defamation by implication is a tort recognized in Florida. Defendants juxtaposed a series of facts so as to imply a defamatory connection between them.

57.     Defendants, together and both of them acting in concert, jointly and severally, and individually, published false statements about Plaintiff Zimmerman and these statements were

defamatory in that they created a false impression of him.

58.     Defendants, together and both of them acting in concert, jointly and severally, and individually, juxtaposed a series of facts so as to imply a defamatory connection between them or, in the alternative, created a defamatory implication by omitting facts when describing the nature and sequence of events.

59.     A reasonable person would understand Defendants' statements to impart the false innuendo, which would be highly offensive to a reasonable person.

60.     Defendants, both of them, intended or endorsed the defamatory inferences that the published statements created and these false, defamatory and misleading statements were made with actual malice.

61.     The false impression of Plaintiff Zimmerman, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling.

62.     Defendants published false, misleading slanderous, defamatory statements to severely harm and damage Plaintiff Zimmerman on their public Twitter posts on February 5, 2020.

63.     These false, misleading and defamatory statements were disseminated on the Internet to the public and directly to millions of their followers, and republished elsewhere for persons in this circuit and the entire world to see and hear. These false, misleading and defamatory tweets were further disseminated by thousands of "retweets" and "likes" by thousands of their followers and others covered by the media, which was the intent of the posting.

64.     Plaintiff Zimmerman has been severely harmed and damaged by these false and misleading defamatory statements because they subjected him to hatred, distrust, ridicule,

contempt, and disgrace.

### THIRD CAUSE OF ACTION
#### *Defamation Per Se*
#### *Defendants Buttigieg and Warren*

65.     Plaintiff Zimmerman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

66.     Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Zimmerman by knowingly, intentionally, willfully, and recklessly publishing statements about him which they knew or should have known to be false and misleading.

67.     Defendants made and published false and defamatory statements concerning Plaintiff Zimmerman by calling, representing and publishing within this district, the nation and the world, with actual malice, that Plaintiff Zimmerman was directly responsible for "white supremacy," "gun violence," "prejudice," "fear" and "racism," among other defamatory innuendos and statements as explained above; and thus murdered Trayvon Martin as a result.

68.     These statements are defamatory per se because they falsely accuse Plaintiff Zimmerman of committing a serious crime, which he was exonerated for, and which amounts to a crime of moral turpitude. As defamation per se, actual malice and damage to Plaintiff Zimmerman is presumed as a matter of law.

69.     Defendants acted in concert and are therefore jointly and severely liable as joint tortfeasors, and individually.

70.     Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Zimmerman were false and/or recklessly disregarded their truth. Defendants had reason to know that their tweets were false and misleading.

71.     Defendants' statements and the tweets were made without any privilege.

72.     Defendants' false words concerning Plaintiff Zimmerman are so harmful that proof of their injurious effect is unnecessary.

73.     As a direct and proximate result of Defendants' extreme, outrageous and malicious, defamatory conduct set forth above, Plaintiff Zimmerman has been the subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.

74.     These false impressions of Plaintiff Zimmerman, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling, as well as to his family. He has also suffered financial damages.

75.     Defendants published numerous false, misleading slanderous, defamatory statements to severely harm and damage Plaintiff Zimmerman on their Twitter accounts.

76.     These false, misleading and defamatory statements were published on Twitter and disseminated on the Internet and retweeted and covered widely in the media for persons in this circuit and the entire world to see and hear.

77.     These false, misleading and defamatory statements were published with actual malice, as Defendants knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth. Defendants also had reason to know that they were false and exhibited a reckless disregard for the truth.

78.     Plaintiff Zimmerman has been severely harmed and damaged by these false and

misleading defamatory statements because they subject him to hatred, distrust, ridicule, contempt, and disgrace.

79.     These statements are *per se* defamatory because they falsely accuse Plaintiff Zimmerman of having committed a felony crime.

80.     As a result of this, Plaintiff Zimmerman suffered severe reputational and other special and general damages, as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff George Zimmerman prays for judgment against Defendants as follows:

a.     Awarding Plaintiff Zimmerman compensatory and actual including consequential and incidental damages in excess of $ 265,000,000.00 million U.S. Dollars for loss of good will and reputation and financial and other damages as pled above in all counts;

b.     Awarding Plaintiff Zimmerman attorney's fees and costs;

c.     Granting any further relief as the Court deems appropriate including preliminary and permanent injunctive relief, as well as leave to later amend to add a claim for punitive damages pursuant to Section 768.72 of the Florida Statutes;

d.     On February 10, 2020, undersigned counsel sent a Retraction Demand email to both Defendants consistent with Florida Statute § 770.01. *See* Exhibit 3. To date, no one has responded to the email and thus this demand has been refused and rejected.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES AND COUNTS  SO TRIABLE.

Dated: February 18, 2020

Respectfully Submitted,

_____ */s/ Larry Klayman*
Larry Klayman, Esq.
The Florida Bar No. 246220
7050 W. Palmetto Park Rd #15-287
Boca Raton, FL, 33433
Telephone:  (561)-558-5336
Email: leklayman@gmail.com

*Attorney for Plaintiff*

EXHIBIT 1

# EXHIBIT 1

← **Pete Buttigieg** ✔
   10.9K Tweets



**Pete Buttigieg** ✔
@PeteButtigieg

Afghanistan veteran, South Bend's Mayor Pete, husband. Running for president to rally Americans together to meet our urgent challenges. Boot-Edge-Edge. (he/him)

⊙ South Bend, Indiana   🔗 peteforamerica.com   🗓 Joined December 2010

**2,591** Following   **1.6M** Followers

---

 **Pete Buttigieg** ✔ @PeteButtigieg · Feb 5
Trayvon Martin would have been 25 today.

How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?

#BlackLivesMatter 👏🏾

💬 13.3K      ⟲ 5.6K           ♡ 42.1K                  ⤒

# EXHIBIT 2

# EXHIBIT 2



### Elizabeth Warren ✓
@ewarren

U.S. Senator, former teacher, and candidate for president. Wife, mom (Amelia, Alex, Bailey, @CFPB), grandmother, and Okie. She/her. Official campaign account.

📍 Massachusetts   🔗 ewar.ren/chip-in   📅 Joined August 2011

**520** Following    **3.6M** Followers

---



**Elizabeth Warren** ✓
@ewarren

My heart goes out to @SybrinaFulton and Trayvon's family and friends. He should still be with us today.

We need to end gun violence and racism. And we need to build a world where all of our children—especially young Black boys—can grow up safe and free.



**Frederick Joseph** ✓ @FredTJoseph · Feb 5
Today would have been Trayvon Martin's 25th birthday.

His memory should always have a place in our hearts, and his tragedy should always have a place in our work. #HappyBirthdayTrayvon



8:13 PM · Feb 5, 2020 · Twitter Web App

**1K** Retweets   **7.4K** Likes

EXHIBIT 3



# Demand to Retract Defamatory Statements Damaging to George Zimmerman

**Larry Klayman** <leklayman@gmail.com>                                             Mon, Feb 10, 2020 at 11:09 AM
To: info@peteformamerican.com, info@elizabethwarren.com

Dear Mr. Pete Buttigeig and Ms. Elizabeth Warren:

On February 5, 2020, you both tweeted out defamatory statements that damaged my client George Zimmerman. These tweets were widely published in Mr. Zimmerman's home state of Florida, nationally and internationally.

Specifically, Mr. Buttiegeig published these false and defamatory statements:

"Trayvon Martin would have been 25 today.

How many birthdays have been stolen from us by white supremacy, gun violence and fear?"

Pete Buttieg#BlackLivesMatter 11:12 am

In addition, Ms. Warren also published the following false statements on February 5, 2020:

"My heart does out to @Sabrina Fulton and Trayvon's family and friends. He should still with us today."

"We need to end gun violence and racism. And we need to build a world where all of our children -- especially young Black boys --can grow up safe and free."

These false and defamatory widely published tweets, which also constitute defamation by implication, were made with knowledge that George Zimmerman was acquitted of murder as the jury found that he acted in self defense. Your published defamatory statements were, at an absolute minimum, also made with a reckless disregard for the truth and thus constitute actual and constitutional malice.

You malicious intent is undisputed, as you defamed my client to try to garner votes in the African-American community and did not care about the truth and the resulting damage to my client.

You are hereby on notice to retract these false and defamatory statements equating Mr. Zimmerman with white supremacy, racism, and gun violence, and fear, among other implied falsehoods, in 24 hours, to mitigate the great damage which you both have caused.

Mr. Zimmerman also expects  public apologies from both of you within this time period.

Finally, please provide the names and contact information for your legal counsels, since you will be sued for defamation. On Mr.. Zimmerman's behalf, I will ask them to accept service of the complaint on your behalf.

Govern yourselves accordingly.

Larry Klayman, Esq.
Counsel for George Zimmerman