UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE ZIMMERMAN,

      Plaintiff,

v.

PETE BUTTIGIEG and ELIZABETH
WARREN,

      Defendants.

Case No. 8:20-cv-1077-T-36CPT

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DOC. 1-1)
FOR LACK OF PERSONAL JURISDICTION OR FOR FAILURE TO STATE A
CLAIM AND INCORPORATED MEMORANDUM OF LAW**

Defendants Pete Buttigieg and Elizabeth Warren, pursuant to Rule 12(b)(2) and (6), Federal Rules of Civil Procedure, request that this Court dismiss the Complaint (Doc. 1-1) of Plaintiff George Zimmerman ("Zimmerman"), and as grounds therefor state:

## I.      INTRODUCTION

On February 26, 2012, Zimmerman fatally shot and killed Trayvon Martin, a 17-year-old Black high school student who had been visiting relatives in The Retreat at Twin Lakes with his father. The killing of Trayvon Martin—and Zimmerman's subsequent acquittal of murder charges based on his claim of self-defense—reignited longstanding public outrage over racial profiling, the plague of shootings of unarmed Black men by law enforcement and vigilantes, and the perceived shortcomings and injustices of our criminal justice system.

This defamation case was brought by Zimmerman, but it concerns statements about Trayvon Martin—not him. Specifically, on February 5, 2020, the day Trayvon Martin would have turned 25 years old, Defendants Buttigieg and Warren honored him on Twitter and voiced pleas for our Nation to be better, an end to racism, an end to gun violence, and for America to become a place where young Black boys can grow up safe, free, and without worry. Defendants did not mention Zimmerman, make any statements or accusations about him, or express anything more than their heartfelt—and First-Amendment protected—opinions about issues deserving of public discourse and the concern of our political leaders.

Nonetheless, Zimmerman filed this lawsuit, in which he seeks $265,000,000.00 for alleged damages caused by two tweets that do not mention him. At the outset, the Court should dismiss Zimmerman's Complaint for lack of jurisdiction over non-resident Defendants, whose tweets Zimmerman admits were not aimed at Florida specifically.  Even

if this Court could exercise personal jurisdiction over Defendants, the Complaint should be dismissed for failure to state a claim. Dismissal is warranted for four reasons.

*First*, the tweets in question contain no statements about Zimmerman personally, and therefore Defendants could not have defamed him. *Second*, even if Defendants' statements could be construed as being about Zimmerman, they express Defendants' pure opinions, which can neither be proven true or false and are therefore incapable of being defamatory. *Third*, Zimmerman does not plausibly allege—as he must—that Defendants acted with actual malice in publishing their respective tweets. *Fourth*, Zimmerman's argument that the tweets should be construed not only to imply that Zimmerman is a racist, but also that he is guilty of the specific crime of "murder," is conclusory and baseless, and therefore cannot survive a motion to dismiss.

Because this Court lacks jurisdiction over Defendants and, in any event, Zimmerman fails to state a claim for relief, Defendants respectfully request this Court dismiss the Complaint. Because any attempt to cure the Complaint's deficiencies would be futile, the Court should do so with prejudice.

## II.   ZIMMERMAN'S ALLEGATIONS

The relevant facts are straightforward.[1] Defendants each separately and independently took to Twitter to honor Trayvon Martin on the day he would have been 25 years old had he not been shot and killed at age 17, and to also express opinions that the Nation should end the scourges of racism and gun violence and create a world safe for children. The indisputably

---

[1] Zimmerman spends pages providing his version of what occurred on the night that he shot and killed Trayvon Martin on the evening of February 26, 2012. (*See* Doc. 1-1 ¶¶ 10-19). But these allegations are self-serving subterfuge designed to distract from the facts of Defendants' statements.

true statements, and questions and opinions which cannot be proven true or false and therefore cannot be defamatory, set out below gave rise to the present lawsuit:

### A.    Buttigieg Tweets a Remembrance of Trayvon Martin's Death and a Question.

Specifically, in his tweet, Buttigieg made the factually true statement that February 5 was Trayvon Martin's birthday and that he would have been 25 on February 5, 2020. The remainder of Buttigieg's tweet does not make any statements at all. Rather, it asked a question: "How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?" He ended his short tweet with a hashtag, "#BlackLivesMatter." His tweet, which speaks for itself, is copied below in its entirety:



Given that Buttigieg did not mention Zimmerman in his tweet or make any statements about him, Zimmerman strains mightily in his Complaint to recast Buttigieg's actual words. According to Zimmerman, Buttigieg's tweet "recklessly implied that Trayvon Martin's death was the result of '*white supremacy, gun violence, prejudice, and fear*,' all of which refer to Zimmerman and the public would understand as referring only to George Zimmerman, who is known to have caused Trayvon's death by shooting him." (Doc. 1 ¶ 22). Zimmerman then

---

[2] Pete Buttigieg (@PeteButtigieg), TWITTER (Feb. 5, 2020), https://twitter.com/petebuttigieg/status/122513519 1330521090?lang=en.

engages in further flights of interpretative fancy by contending that, (1) through the term "white supremacy," Buttigieg "claim[ed] . . . Zimmerman shot Trayvon Martin in cold blood due to his '*white supremacy*'"; (2) through the term "*gun violence*," Buttigieg *implied* "that Zimmerman had engaged in '*gun violence*' which is," according to Zimmerman, "at a minimum, generally understood in the public arena to refer to the reckless and indiscriminate use of illegally owned firearms that causes the death of random innocent victims"; (3) use of the word "prejudice" amounts to a "smear that disparages and defames Zimmerman . . . by implying Zimmerman fired a weapon out of '*prejudice*' which is also thought of as 'racism' or hate of someone's race or skin color"; (4) the "remark about '*fear*' . . . implies racism on the part of Zimmerman as regards to Trayvon Martin's skin color, and implies that Zimmerman shot Martin out of '*fear*' of his skin color or race, essentially that Zimmerman is a racist"; and (5) that using the hashtag "*#BlackLivesMatter*" was "intended to remind [Buttigieg's] followers and the public of Zimmerman being a target for hate, and labels Zimmerman as the person who had killed Trayvon Martin because of Zimmerman's '*white supremacy, gun violence, prejudice, and fear*.'" *Id.*

In other words, Zimmerman takes a tweet that says this:

> "Travyon Martin would have been 25 today.  How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear? #BlackLivesMatter"

And he reads it to say—and infers that the public understood it to say—something like this:

> "Travyon Martin would have been 25 today.  George Zimmerman shot Travyon Martin in cold blood because he is and was a racist and white supremacist, engaged in gun violence (*i.e.* the reckless and indiscriminate use of illegally owned firearms that causes the death of random innocent victims) in killing Martin, fired a weapon out of prejudice, racism, and hate, and shot Martin out of fear of Martin's skin color or race."

- 4 -

**B.      Warren Expresses Her Sympathies to Trayvon Martin's Family and Friends and Expresses Her Opinion that "We" Need to End Gun Violence and Racism and Create a World Safe for Children.**

Also on what would have been Trayvon Martin's 25th birthday, Warren took to Twitter to "retweet" a tweet by Frederick Joseph, a marketing professional, writer, and media representation advocate who had also noted Trayvon Martin's birthday and premature death and posted pictures of him. In her "retweet," Warren expressed condolences to Trayvon Martin's mother, family and friends, and her opinion that Trayvon "should still be with us today." She then expressed to her followers that "we" should work together to "end gun violence and racism" and "to build a world where all of our children—especially young Black boys—can grow up safe and free." Her retweet, below, speaks for itself:



---

[3] Elizabeth Warren (@ewarren), TWITTER (Feb. 5, 2020), https://twitter.com/ewarren/status/1225271209903
955968?lang=en.

As with Buttigieg's tweet, Warren's retweet does not say a single thing about Zimmerman. Accordingly, Zimmerman's Complaint embarks on what reads like a bad freshman year paper in a literary criticism class. Zimmerman alleges: (1) "[u]se of the phrase 'He should still be with us today' . . . implied that Trayvon Martin is not alive due to 'gun violence and racism'"; (2) use of the term "gun violence" implied that "Zimmerman had engaged in 'gun violence' which is generally understood . . . to refer to the reckless and indiscriminate use of illegally owned firearms that causes the death of a random innocent victim"; (3) use of the word "racism" implied that "Zimmerman fired a weapon and that Trayvon Martin is not 'with us' due to 'racism'"; and (4) that "Warren's including multiple images of Trayvon Martin as a small child along the context [sic] of her claims that Trayvon Martin was not with us due to 'gun violence and racism'" is defamatory because it "promot[es] the false idea [Zimmerman] had killed an innocent small child due to his '*gun violence and racism*.'" Compl. ¶ 24.

## C.    Zimmerman's Conclusory Allegations of Actual Malice.

According to Zimmerman, Defendants knew or should have known that the statements they did not make but which Zimmerman attributes to them were purportedly false for two reasons. First, Zimmerman references the publication, in September of 2019, of a film and book, both entitled *The Trayvon Hoax: Unmasking the Witness Fraud that Divided America* by right-wing conspiracy theorist and political commentator Joel Gilbert, who is widely known for making unfounded accusations such as, for example, that "President Obama has a secret Muslim prayer inscribed on his wedding ring," that "Obama had plastic surgery to conceal that his real father was labor activist Frank Marshall Davis,

who raised his son to lead a communist revolution," and that "Bill Clinton has a 30-year-old son he sired with a black prostitute."[4] (Doc. 1-1 ¶ 19). Second, Zimmerman notes that, on December 5, 2019, he filed a lawsuit alleging defamation, abuse of civil process and conspiracy against Trayvon Martin's mother, the Martin family's attorney, the State of Florida, the prosecutors who brought the criminal case against Zimmerman, and others seeking $100 million dollars in damages. (*Id.* ¶ 20).

Zimmerman alleges that Defendants acted with actual malice because "they were part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Zimmerman's reputation and profession." (*Id.* ¶ 30). Zimmerman claims this is clear because Defendants did not "investigate" what Zimmerman contends are their "seriously false allegations" or "seek comment from Plaintiff Zimmerman or his lay or legal representatives." (*Id.* ¶ 33).

Zimmerman further claims that the tweets are demonstrative of Defendants' putative objective of "hostility, anger and retaliation to 'get' Plaintiff Zimmerman," to act on a "preconceived plan to discredit and destroy Plaintiff Zimmerman as part of their political agenda to garner votes in the black community in particular before the 2020 election," and reflect the "ill-will or hostility that Defendants' harbor [sic] for Plaintiff Zimmerman," which Zimmerman contends he should be able to establish through discovery, which he asserts will reveal circumstantial evidence of the same. (*Id.* ¶ 33). Zimmerman's Complaint does not include factual allegations shedding light on why Warren and Buttigieg would seek to

---

[4] Dana Milbank, *Latest from the Trump conspiracy factory: Bill Clinton's black son*, THE WASHINGTON POST (Nov. 1, 2016), https://www.washingtonpost.com/opinions/latest-from-the-trump-conspiracy-factory-bill-clintons-black-son/2016/ 11/01/d05e321e-a070-11e6-a44d-cc2898cfab06_story.html.

advance their own "political agenda" by entering into a secret cabalistic arrangement with a then-rival during the 2020 Democratic primaries to defame Zimmerman by sending tweets that did not reference him.

### III.    ARGUMENT

#### A.    This Court Lacks Jurisdiction over Defendants.

As a preliminary matter, this suit should be dismissed for lack of personal jurisdiction because neither Buttigieg nor Warren has a sufficient personal connection to the State of Florida.

Rule 12(b)(2) permits a defendant to challenge a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Under the Rule, if challenged, the party asserting jurisdiction bears the burden of alleging a *prima facie* case for jurisdiction. *See Robinson v. Giarmarco & Bill. P.C.*, 74 F.3d 253 (11th Cir. 1996). This *prima facie* case must consist of enough evidence to withstand a directed verdict when the facts as alleged are taken as true. *Id.* at 255.

A court must have both statutory and constitutional authority to assert jurisdiction over a defendant. *See generally McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221-23 (1957). In determining whether a court has personal jurisdiction over a defendant, the court must first look to the state's long-arm statute, and, if the defendant can be reached by that statute, the court must then determine if an assertion of jurisdiction would be constitutional. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).[5]

---

[5] Zimmerman does not plead, nor can he, that nonresident Defendants have sufficient "continuous and systematic" contacts with the State of Florida to confer general jurisdiction over them. *See Woods v. Nova Cos.*

The Florida Supreme Court has held "that posting defamatory material on a website alone does not constitute the commission of a tortious act within Florida for purposes of section 48.193(1)(b), Florida Statutes," but that when "the material posted on the website about a Florida resident" is "not only . . . *accessible* in Florida," but has also been "*accessed* in Florida*," then the posting may "constitute the commission of the tortious act of defamation within Florida under section 48.193(1)(b)," Florida's long-arm statute. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010).

Here, Zimmerman pleads that (a) Defendants' "tweets are widely covered in the national and international media, and in particular in the state of Florida," (Doc. 1-1 ¶¶ 5, 6) and (b) were "published nationally and internationally and in Polk County in the state of Florida," (*Id*. ¶ 43), i.e., that these tweets were the subject of said news coverage.

Even assuming, for the sake of argument, that this sufficed to plead coverage under Florida's long-arm statute, exercising personal jurisdiction over these non-resident Defendants would violate due process. As the Supreme Court has clarified, the constitutional analysis "looks to the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In determining whether the tortious act was aimed at the forum state, specifically, a "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 289-90 ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). Thus, the

---

*Belize, Ltd*., 739 So. 2d 617, 620 (Fla. 4th DCA 1999); *Meyer v. Carnival Corp.*, 938 F. Supp. 2d 1251, 1258 (S.D. Fla. 2013). Accordingly, Defendants focus on the fact that the Court lacks specific personal jurisdiction over them based on their respective tweets, which constitute the entirety of the conduct alleged in Zimmerman's Complaint.

"proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290.

Here, Zimmerman himself alleges that Warren and Buttigieg are not residents of Florida. (*See* Doc 1-1 ¶¶ 1, 5-6 (asserting that Buttigieg is an Indiana resident and that Warren is a D.C. resident)).[6] Zimmerman does not allege—nor could he—that either tweet was sent from within Florida. Zimmerman does not allege, nor could he, that Defendants' respective tweets, which were published from outside of Florida to a national audience and address areas of deep, nationwide public concern regarding prejudice, racism, and gun violence, were targeted at the State of Florida, specifically. Zimmerman's only allegation that Defendants' tweets targeted the State, specifically, is that Florida is "the third largest state and . . . is crucial to win the 2020 Democrat presidential primary and the general presidential election." (*Id.* ¶¶ 5, 6). This is simply not enough. *See e.g., Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015) (dismissing for lack of personal jurisdiction where defendant's "posts were meant for a national or even international audience," and "the only connection" between his tweets and the forum state was "Plaintiff's [alleged] injury."); *Blankenship v. Napolitano*, No. 2:19-CV-00236, 2020 WL 1548060, at *19 (S.D.W. Va. Mar. 31, 2020) (dismissing for lack of personal jurisdiction based on the fact that "[t]he allegedly defamatory statements were stray comments in news articles about national political issues aimed at a national audience," and it was therefore unreasonable to expect defendants to "anticipate being haled into" court in the forum state); *Paterno v. Laser Spine Inst.*, 24

---

[6] Warren, in fact, resides in Massachusetts.

N.Y.3d 370, 377 (2014) ("[P]assive websites . . . which merely impart information without permitting a business transaction, are generally insufficient to establish personal jurisdiction.") (collecting authority). Accordingly, asserting personal jurisdiction over Defendants here would not only be contrary to Florida's long-arm statute, it would also offend the constitutional strictures of due process, and Zimmerman's claims against Defendants must therefore be dismissed.

### B.    Zimmerman Fails to State a Claim for Relief.

Zimmerman asserts three claims, styled as general defamation, defamation by implication, and defamation *per se*. (Doc. 1-1 ¶¶ 44-80). Under well-established precedent, his allegations do not render those claims plausible. Because these defects are incurable and any amendment "would be futile," each claim should be dismissed with prejudice. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1340 (11th Cir. 2010).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" should be dismissed. To survive, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Rather, the Complaint must "plead[] *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

Zimmerman fails to establish the basic elements of defamation. Under Florida law, a plaintiff must allege: "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to plaintiff." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citing *Bass v. Rivera*, 826 So. 2d 534, 534 (Fla. 2d DCA 2002)). If the plaintiff is a public figure, the First Amendment requires the plaintiff to further show by clear and convincing evidence that any statement was "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). This requirement reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," even when it "include[s] vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Id.* at 270. "That is 'because speech concerning public affairs is more than self-expression; it is the essence of self-government.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964)). Accordingly, "[t]o preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).

In addition, there are certain statements that cannot "reasonably [be] interpreted as stating actual facts" about an individual. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988). Statements such as opinion, satire, epithets, or rhetorical hyperbole cannot be the subject of liability for defamation. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20

(1990) ("This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation"). Such statements cannot give rise to a claim for defamation as a matter of law, and they are immunized from liability by the First Amendment to the United States Constitution.

Here, (1) the tweets are not about Zimmerman; (2) they do not include false statements—they contain undeniably true statements and constitutionally-protected opinion; and (3) in any event, would not be actionable as a matter of law because Zimmerman fails to plead facts from which actual malice might reasonably be inferred. Accordingly, the claims should be dismissed with prejudice.

### 1.    Defendants' Tweets Are Not About Zimmerman.

The tweets make no actual claims about Zimmerman—nor do they imply anything about Zimmerman—they do not mention Zimmerman at all. Under Florida law, a claim for defamation must include not only a statement that is alleged to be false, the statement must be "*about* the plaintiff." *Border Collie Rescue, Inc.*, 418 F. Supp. at 1348 (emphasis added) (citing *Bass*, 826 So. 2d at 534). Because Defendants' respective tweets were, on their face, about Trayvon Martin and issues of general public concern, rather than about Zimmerman personally, Zimmerman has failed to plausibly plead an essential element of his claim. As the Florida Supreme Court has noted, "in defamation cases the interest sought to be protected is the *objective* one of reputation, either economic, political, or personal, in the outside world," rather than the *subjective* interpretation or alleged injury of the plaintiff. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1109 (Fla. 2008) (quoting *Welling v. Weinfeld*, 866 N.E.2d 1051,

1057 (2007)). Indeed, the notion that anyone who acknowledges the untimely death of Trayvon Martin is necessarily making a statement about *Zimmerman*—and thus risks Zimmerman launching a defamation claim against them—is chilling. Accordingly, his claims should be dismissed.

> ### 2.   Defendants' Tweets Contain Only True Statements, Questions, and/or Pure Opinion and, Therefore, Cannot Give Rise to a Claim for Defamation.

Even if Defendants' respective tweets *were* "about" Zimmerman, which they were not, the tweets would still fail to give rise to a claim for defamation. This is so for three primary reasons.

First, the only factual statement in either tweet is Buttigieg's statement that February 5 is Trayvon Martin's birthday and that he would have been 25 on February 5, 2020. This is true and Zimmerman does not allege otherwise.

Second, the remainder of Buttigieg's tweet consists of a question: "How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?" *supra* n.2. As then-Judge Kavanaugh explained in dismissing a defamation claim premised on questions about the plaintiff, "questions are not factual representations." *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015); *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995) (a defendant's "use of a question mark . . . makes clear his lack of definitive knowledge about the issue" and therefore precludes a defamatory interpretation). Accordingly, "it is generally settled as a matter of defamation law in other jurisdictions that a question, 'however embarrassing or unpleasant to its subject, is not accusation.'" *Abbas*, 783 F.3d at 1338 (citation ommitted). Even assuming that Buttigieg's question is construed to be

about Zimmerman, that question is not and cannot be defamatory because it does not assert a fact.[7]

Third, other than the factual statements referenced above, the tweets contain pure opinion. In reality, those opinions are about racism and related violence writ large. But even assuming those opinions are construed to regard Zimmerman's racism or prejudice and/or the appropriateness of him shooting and killing an unarmed 17-year old in the circumstances presented, such pure opinion cannot give rise to a defamation claim.

The Supreme Court has indicated that "statement[s] on matters of public concern *must be provable as false* before there can be liability under state defamation law, at least in situations, . . . where a media defendant is involved." *Milkovich*, 497 U.S. at 19-20 (emphasis added). Accordingly, "a statement of opinion relating to matters of public concern [that] does not contain a provably false factual connotation will receive full constitutional protection." *Id.*

Courts have repeatedly held that statements accusing a plaintiff of being racist are non-actionable matters of public concern, because they lack any provably false factual connotation. *See e.g.*, *Garrard v. Charleston Cty. Sch. Dist.*, 838 S.E.2d 698, 713–14 (S.C. Ct. App. 2019), *reh'g denied* (Mar. 18, 2020) ("We do not find that the term 'racist douchebag' can "reasonably [be] interpreted as stating actual facts," and, "whether someone 'more or less behaved like [a] racist douchebag' or whether someone condoned an act that

---

[7] Buttigieg's tweet ends with a hashtag (#BlackLivesMatter). Stating the name of a social movement and/or social organization is not a factual "statement"—whether about Zimmerman or anything else. If this hashtag *is* a factual statement, Zimmerman cannot seriously contest that it is a true one (Black lives do matter). And if somehow this hashtag obliquely refers to Zimmerman (which it doesn't), it would be because Buttigieg was expressing an opinion about Trayvon Martin's death.

was 'racist' is susceptible to varying viewpoints and interpretations," and concluding "the use of the term 'racist' in an opinion editorial to describe a sequence of events related to a racially sensitive matter does not assert any verifiable, objectively provable fact"); *McCafferty v. Newsweek Media Grp., Ltd.*, No. 18-cv-1276, 2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019), *aff'd*, 955 F.3d 352 (3d Cir. 2020) (holding that characterizations of a plaintiff as "alt-right" were not actionable, because "these implications . . . are merely characterizations of [plaintiff]'s political view"); *see also Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face," and thus falls "comfortably within the immunity for name-calling."); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 807 (W.D. Pa. 1972) ("We hold that to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel."); *Squitieri v. Piedmont Airlines, Inc.*, No. 17-cv-441, 2018 WL 934829, at *4 (W.D. N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false.") (collecting cases); *Overhill Farms, Inc. v. Lopez*, 119 Cal. Rptr. 3d 127, 140 (2010) ("[C]harging a person with being racist, unfair or unjust—without more—[ . . . ] constitute mere name calling and do not contain a provably false assertion of fact" as required to state a claim for defamation); *Forte v. Jones*, No. 11-cv-0718, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("[T]he allegation that a person is a 'racist' . . . is not actionable because the term 'racist' has no factually-verifiable meaning."); *Edelman v. Croonquist*, No. 09-1938 (MLC), 2010 WL 1816180, at *6 (D.N.J. May 4, 2010) ("The defendant's characterization of her in-laws as racists is a subjective

assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); Kristina E. Music Biro et al., 50 Am. Jur. 2d *Libel and Slander* § 200 (2020) ("However, general statements charging a person with being racist, unfair, or unjust, without more . . . constitute mere name calling and do not contain a provably false assertion of fact as required for defamation.").

Likewise, an opinion that a public figure is a fascist, a white supremacist, or an extremist cannot a claim for defamation make. *Buckley v. Littell*, 539 F.2d 882, 895 (2d Cir. 1976) ("The issue of what constitutes an 'openly fascist' journal is as much a matter of opinion or idea as is the question what constitutes 'fascism' or the 'radical right.'"); *McCafferty*, 2019 WL 1078355, at *4  (stating or implying that someone was a member or spokesperson for the alt-right was non-actionable opinion); *see also Clark v. Allen*, 204 A.2d 42, 48 (Pa. 1964) (statement that United States Senator's voting record showed "*Communist tendencies*" was not defamatory as a matter of law).

Here, Defendants did not so much as mention Zimmerman in their respective tweets, *see supra* at Section III(B)(1), let alone accuse him of white supremacy, racism, prejudice, or fear. However, even *if* Defendants had made such statements about Zimmerman, those statements could not give rise to claims of defamation as a matter of law. Indeed, Zimmerman *concedes* that Defendants' tweets reflected their opinions, characterizing them as reflecting "Defendants' preconceived view or slant." (Doc. 1-1 ¶ 33). But Defendants' "view" or opinion, regardless of how "slant[ed]" Zimmerman alleges it is, is entitled to the full protections of the First Amendment and is not actionable as a matter of law. Accordingly, Zimmerman's claims should be dismissed with prejudice.

### 3.    Zimmerman Fails to Plausibly Allege Actual Malice.

Finally, the claims should be dismissed because Zimmerman has not and cannot plead facts rendering his allegations of actual malice plausible. Zimmerman spills much ink in reiterating the words "actual malice" repeatedly throughout his Complaint, (*see id.* ¶¶ 25-43), but his repetition does not render these allegations any less conclusory.

Zimmerman does not dispute he is a public figure.[8] Thus, Zimmerman "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *Sullivan*, 376 U.S. at 280). "Ill-will, improper motive or personal animosity plays no role in determining whether a defendant acted with 'actual malice.'" *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999). Actual malice means knowledge that the statement was false or reckless disregard of whether it was false or not. *Sullivan*, 376 U.S. at 279–80. "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing"—instead, "[t]here must be sufficient evidence to

---

[8] If Zimmerman believes that any reference to Trayvon Martin is inextricably linked to him—which is the whole premise of this lawsuit—he cannot seriously dispute that he is a public figure for purposes of his defamation claims against the Defendants. Notably, since Trayvon Martin's death, Zimmerman has sought to remain in the limelight and stoke the ire of the public, including but not limited to by: (1) auctioning off "the very gun he used to kill unarmed, 17-year-old Trayvon Martin on February 26, 2012," and calling "the gun an 'American Firearm Icon' and wrote that proceeds will be used to "fight [Black Lives Matter] violence against Law Enforcement officers' and to 'ensure the demise of [the prosecutor who brought charges against Zimmerman's] persecution career and Hillary Clinton's anti-firearm rhetoric'"; (2) retweeting a photograph of Trayvon Martin's slain body, which read "Z-man is a one-man army"; (3) engaged in doxing and revenge porn by posting "semi-nude photographs of his ex-girlfriend," which he captioned with "her personal email address and telephone number and accused her of having sex with a 'dirty Muslim.'" Travis M. Andrews, *George Zimmerman's many, many controversies since the Trayvon Martin case*, THE WASHINGTON POST (May 12, 2016), https://www.washingtonpost.com/news/morning-mix/wp/2016/05/12/george-zimmermans-many-many-controversies-since-the-trayvon-martin-case/.

permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

In determining whether a defendant acted with actual malice, courts should consider, for example, whether (1) the "story is fabricated by the defendant [and] is the product of his imagination," (2) the story "is based wholly on an unverified anonymous telephone call," (3) the "publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation," and (4) "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* at 731-32. Importantly, "[t]he subjective awareness of probable falsity required by [*Sullivan* and its progeny] cannot be found where, as here, the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978).[9]

Zimmerman has not alleged facts that plausibly suggest actual malice by either Defendant. Again, Defendants commend their actual statements to the Court, which are opinions (and fairly unassailable ones at that). It is a startling allegation that, for example, Warren made the following statement with actual "malice": "[W]e need to build a world where all of our children—especially young Black boys—can grow up safe and free." *Supra* n.3. Or that Buttigieg asked with actual "malice" how many 25th birthdays had been lost to "white supremacy, gun violence, prejudice, and fear?"

In any event, Zimmerman's attempts to plead facts supporting his claim of actual

---

[9] Issued prior to 1981, the Fifth Circuit's decision in *Rosanova* is controlling on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

malice fall far short. In support of his claim that Defendants knew or acted with reckless disregard as to whether their statements were purportedly false, Zimmerman makes just two non-conclusory factual assertions.

First, in September of 2019, Zimmerman pleads that Defendants acted with actual malice because of the mere existence of a film and book entitled *The Trayvon Hoax: Unmasking the Witness Fraud that Divided America*. (Doc. 1-1 ¶ 19). The book and film, however, were released by conspiracy theorist Joel Gilbert, who is widely known for his untethered and off-the-wall allegations that, for example, "President Obama has a secret Muslim prayer inscribed on his wedding ring," that President "Obama had plastic surgery to conceal that his real father was labor activist Frank Marshall Davis, who raised his son to lead a communist revolution," and that "Bill Clinton has a 30-year-old son he sired with a black prostitute." *See supra* at n.4. Zimmerman does not plead that either Defendant is familiar with Gilbert's oeuvre (or that, if they were, Gilbert's work would and should have raised serious questions about any of the tweets' content).

Second, Zimmerman relies on the fact that, on December 5, 2019, he filed a lawsuit against Trayvon Martin's mother, the Martin family's attorney, the State of Florida, the prosecutors involved in the criminal case against Zimmerman, and others seeking $100 million dollars in damages and making similar factual claims with regard to February 26, 2012 and his subsequent prosecution as he does here. (*See* Doc. 1-1 ¶ 20). That Zimmerman made self-serving claims in a lawsuit he filed against Trayvon Martin's family and others supplies no plausible basis for inferring actual malice. As a matter of law, a defendant's putative awareness of self-serving denials filed in a separate civil suit does not support, let

alone create, an inference of the "serious doubt" as is necessary to demonstrate actual malice. *Smith v. Huntsville Times Co., Inc.*, 888 So. 2d 492, 501 (Ala. 2004) (rejecting as evidence of actual malice a denial by spokesperson for plaintiff's department); *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("[S]uch denials are so commonplace . . . that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."). Nor does the fact that a conspiracy theorist has profited from Trayvon Martin's premature death with a film and book—Defendants had no obligation to consume, let alone rely upon, propaganda produced by a politically motivated and widely discredited hack.

Zimmerman further suggests that Defendants acted with actual malice because "they were part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Zimmerman's reputation and profession." (Doc. 1-1 ¶ 30).[10] To Zimmerman, this is clear because Defendants did not act on some imagined duty before voicing their opinions on Twitter to "investigate" what Zimmerman contends are their "seriously false allegations" or "seek comment from Plaintiff Zimmerman or his lay or legal representatives." (*Id.* ¶ 33). Zimmerman further claims that the tweets are demonstrative of Defendants' putative objective of "hostility, anger and retaliation to 'get' Plaintiff Zimmerman," to act on a "preconceived plan to discredit and destroy Plaintiff Zimmerman as part of their political agenda to garner votes in the black community in particular before the 2020 election," and reflect the "ill-will or hostility that Defendants' harbor [sic] for Plaintiff

---

[10] Zimmerman's suggestion that there is some Democratic conspiracy to "destroy" him to garner Black votes for their own (then opposing) political campaigns during the Democratic primary, and that Defendants were both party to this putative left-leaning plot, is as baseless as it is bizarre. But, in any event, the Eleventh Circuit has made clear that "[i]ll-will, improper motive or personal animosity plays no role in determining whether a defendant acted with 'actual malice.'" *Dunn*, 193 F.3d at 1198 n.17.

Zimmerman," which Zimmerman contends he should be able to establish through discovery, which he asserts will reveal circumstantial evidence of same. (*Id.*)

This is simply wrong. It is based on a misapprehension of law. Because the First Amendment's actual malice standard is subjective, "a failure to investigate, standing on its own, does not indicate the presence of actual malice." *Michel*, 816 F.3d at 703; *Smith*, 888 So. 2d at 500 ("[M]alice cannot be measured by whether a reasonably prudent man would have published, or would have investigated before publishing.") (quotations omitted). Defendants had no duty to "investigate" their tweets or contact Zimmerman (Doc. 1-1 ¶ 33) before sending tweets that were not about him.

And, contrary to Zimmerman's claims, Defendants would have had no subjective basis to doubt what Zimmerman accuses Defendants *implied* about him, even had they actually made such statements, which they did not; allegations that Zimmerman acted with racial animus on the day that Trayvon Martin was killed, and reports he has made racially discriminatory statements since, have been widely reported.[11] It would gut First Amendment protections if a person could not speak about a public figure who denied unflattering news coverage, and courts have time and again rejected that absurd position. *See, e.g.*, *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 82, 85 (D.D.C. 2019) (dismissing claim over statements that U.S. Senate candidate "conduct[ed] racial profiling on a mass scale," "terroriz[ed] immigrant neighborhoods," and oversaw "humiliating" and "lethal" jails where one inmate was "left battered on the floor to die" because "publicly reported news events . . . underpinning [such]

---

[11] *See e.g.*, *supra* n.8 (quoting Travis M. Andrews, *George Zimmerman's many, many controversies since the Trayvon Martin case*, The Washington Post (May 12, 2016)).

claims" made "ample reason to reject" assertion of actual malice); *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1161 (S.D. Fla. 2018) (rejecting claim over statement that plaintiff dealt arms because accusations were "already the subject of 'widespread media reports'"). Having "reasonably relied" on "a multitude of previous reports," Defendants could not have entertained serious doubts about the veracity of their alleged *implications*. *Rosanova*, 580 F.2d at 862; *see also Liberty Lobby, Inc. v. Dow Jones Co., Inc.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) ("[G]ood faith reliance on previously published reports . . . precludes a finding of actual malice as a matter of law.").

Because Zimmerman has failed to state a plausible basis upon which actual malice can be inferred, as he must do as a public figure, his claims should be dismissed.

### 4. Zimmerman's Defamation *Per Se* Claim is Meritless.

Finally, Zimmerman alleges that Defendants' statements *imply* that "Zimmerman was directly responsible for 'white supremacy,' 'gun violence,' 'prejudice,' 'fear' and 'racism,'" and that, based on those implications, the statements further *imply* that Zimmerman "thus murdered Trayvon Martin as a result," (Doc. 1-1 ¶ 67). To get there, Zimmerman needs to establish the following convoluted chain of inferences: *first*, that the tweets were about Zimmerman, *next*, that they implied that he was a racist or a white supremacist, or that he acted with prejudice, fear or racism on the day that he shot and killed Trayvon Martin, and *third* that, on account of the tweet being about him, and suggesting that he acted with prejudice, fear or racism on the day that he shot and killed Trayvon Martin, that Defendants are implying that Zimmerman acted with unlawful intent and in circumstances where he could not take advantage of Florida's self-defense law and, therefore, that Defendants' tweets

accuse him of the crime of murder. This highly attenuated and "conclusory allegation[]" amounts to an "unwarranted deduction[] of facts or legal conclusions masquerading as facts" which should "not prevent dismissal." *Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188.

Under Florida law, "[w]here the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in either dismissing the complaint for failure to state a cause of action or in granting a directed verdict at the proof stage." *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973). A "trial court must evaluate the publication, not by 'extremes, but as the common mind would naturally understand it.'" *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (quoting *McCormick v Miami Herald Publ'n Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962). "In other words, the statement should be considered in its natural sense without a forced or strained construction." *Id.*

Because Zimmerman's defamation *per se* claims would require a strained construction that first finds one implication and then derives from that implication another, Zimmerman's defamation *per se* claims are not tethered to the plain meaning of the challenged tweets and should therefore be dismissed with prejudice.

## IV.    CONCLUSION

Stripped to its essence, Zimmerman's Complaint is based on the proposition that anyone who honors Trayvon Martin's passing, expresses sympathy to his family, and believes his untimely death is a tragedy that raises serious social issues is defaming George Zimmerman. This proposition is contrary to law, flies in the face of the First Amendment and is, quite candidly, offensive. Even if this Court could assert personal jurisdiction over

Defendants, Zimmerman has not pled facts making it plausible that he can satisfy the elements of his claims. Because Zimmerman's allegations prove he cannot satisfy such elements, any attempt to amend would be futile. The Court should dismiss these claims with prejudice.

Dated: May 29, 2020

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111
**KING, BLACKWELL, ZEHNDER**
  **& WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias*
**Perkins Coie LLP**
700 13th St. N.W., Suite 800
Washington, D.C. 20005-3960
Tel.: (202) 654-6200
Fax: (202) 654-9106
MElias@perkinscoie.com

William B. Stafford*
**Perkins Coie LLP**
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Tel.: (206) 359-8000
Fax: (206) 359-9000
WStafford@perkinscoie.com

* *Admitted pro hac vice*

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2020, I filed a copy of the foregoing Defendants'

Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111

*Attorneys for Defendants*