# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **GEORGE ZIMMERMAN**<br><br>Plaintiff,<br>v.<br><br>**PETE BUTTIGIEG et al.**<br><br>Defendants | Case No.: 8:20-cv-01077-CEH-CPT |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff George Zimmerman ("Plaintiff") hereby submits his opposition to Defendants Pete Buttigieg ("Buttigieg") and Elizabeth Warren's ("Warren") Motion to Dismiss.

## I.   INTRODUCTION

This actions centers around two tweets from Buttigieg and Warren that maliciously defame Plaintiff, all in an effort to pander to the African-American community in Florida in order to drum up support and votes for their now failed presidential campaigns. Not coincidentally, Florida is "the third largest state and which is crucial to win the 2020 Democrat presidential primary and the general presidential election." Comp. ¶ 6. It is telling that Defendants chose to tweet about an event that so polarized Floridians. These tweets were nothing more than cynical and defamatory campaign efforts targeted at Florida and this district, among others.

Specifically, On February 5, 2020, Buttigieg tweeted:

Trayvon Martin would have been 25 today. How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear? #BlackLivesMatter. Comp. ¶ 8.

Warren tweeted:

> My heart goes out to @SybrinaFulton and Trayvon's family and friends. He should still be with us today. We need to end gun violence and racism. And we need to build a world where all of our children—especially young Black boys—can grow up safe and free. Comp. ¶ 9.

It is clear that these tweets were "of and concerning" Plaintiff, as set forth below, under Florida defamation law, since it is universally known that Plaintiff had shot Trayvon Martin, but was acquitted of all charges as he had been found to have acted in self-defense. Comp. ¶17. Thus, Buttigieg and Warren had no factual basis to assert that Plaintiff had acted due to "white supremacy," "gun violence," or "racism" in shooting Trayvon Martin, as the official finding of the court was that he had acted in self-defense. This is plainly defamatory.

## II. ARGUMENT

### A. This Court Has Personal Jurisdiction over Defendants

During the motion to dismiss stage, a plaintiff need only "establish a prima facie case of personal jurisdiction over a nonresident defendant." *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990)). When determining whether a prima facie case has been established, "[t]he district court must accept the facts alleged in the complaint as true . . . [and] the district court must construe all reasonable inferences in favor of the plaintiff." Id. If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff can substantiate the jurisdictional allegations in the complaint by affidavits or other evidence. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

"Whether the court has personal jurisdiction over a defendant is government by a two-part analysis." Ver*izon Trademark Servs., LLC v. Producers, Inc*., 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011). First, the court determines whether the applicable state long-arm statue is

satisfied. *Future Tech. Today*, 218 F.3d at 1249. Second, if the state long-arm statute is satisfied, the court analyzes "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.,* 810 F. Supp. 2d at 1324.

Defendants apparently concede that the Florida long-arm statute is satisfied. As set forth in Defendants' motion, "…when "the material posted on the website about a Florida resident" is "not only . . . *accessible* in Florida," but has also been "*accessed* in Florida," then the posting may "constitute the commission of the tortious act of defamation within Florida under section 48.193(1)(b)," Florida's long-arm statute. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010)." ECF No. 17 at 10. The Complaint alleged that Defendants' tweets were "widely covered in the national and international media, and in particular in the state of Florida," Comp. ¶¶ 5, 6) and (b) were "published nationally and internationally and in Polk County in the state of Florida." Comp. ¶ 43. Thus, it is clear that the subject tweets were accessed in Florida, thereby satisfying the long-arm statute.

With regard to due process, "[a] fundamental element of the specific jurisdiction calculus is that a plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The Eleventh Circuit has instructed that a court's "inquiry must focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355-56. Here, Defendants were both amidst presidential campaigns at the time they made the subject tweets. Comp. ¶¶ 5-6. Not coincidentally, Florida is the "third largest state and which is crucial to win the 2020 Democrat presidential primary and the general presidential election." Comp. ¶5. These tweets were specifically designed to drum up voter support in Florida. "Defendant Buttigieg and

Defendant Warren defamed Zimmerman for political gain in misguided and malicious attempts to bolster their standings amongst African-American voters, all at Zimmerman's expense." Comp. ¶ 1. Defendants knew that they had to gain voter support in Florida in order to have a chance of being nominated and elected, as it is and has been one of the main swing states. Thus, Defendant specifically target Florida with their tweet.

Defendants have also specifically targeted Florida with their efforts to raise money for their presidential campaigns. Buttigieg even hired a staffer from Tampa Mayor Jane Castor's team, Samantha Pollara, to serve as his "Florida Investment Director."[1] In August of 2019, Buttigieg held a series of campaign events in Orlando, Florida to "help build support and campaign funding…."[2] In just February of this year, Buttigieg had planned a campaign trip to South Florida to "hold fundraisers and 'community conversations,'" but had to cancel due to illness.[3]

Warren actually opened a campaign offices in Orlando and Miami. As reported by the Orlando Sentinel, "[t]he office had been in the Warren campaign's plans since September, when it announced its official presence in Florida as part of its strategy vying for voters in the key battleground state. The campaign's first state office opened in Miami last year."[4] Warren had a full team of Florida campaign staffers, "led by her Florida state director Kimberly Diaz Scott….

---

[1] https://floridapolitics.com/archives/296193-jane-castor-pete-buttigieg-campaign

[2] https://www.mynews13.com/fl/orlando/news/2019/08/07/pete-buttigieg-looks-for-campaign-support-and-funding-in-orlando

[3] https://www.miamiherald.com/news/politics-government/election/article240645697.html

[4] https://www.orlandosentinel.com/news/os-ne-elizabeth-warren-orlando-office-20200201-puj2zbbobrfv7oxbtsczxigwum-story.html

Diaz Scott is joined by a team of nine strategists and organizing, data, mobilization, and training directors, giving Warren one of the most complete campaign operations in Florida."[5]

Thus, it is clear that both Warren and Buttigieg both consciously targeted Florida as a key part of their presidential campaigns. Since the Complaint alleges that their tweets were made as part of their campaigning efforts, and directly concern both Plaintiff and Trayvon Martin, there can be no due process violation. In fact, under Florida law, presidential candidates have to register in Florida in order to campaign and solicit funds, which both Defendants have done.

Lastly, in the U.S. Supreme Court case of *Keeton v. Hustler, Inc.,* 465 U.S. 770 (1984), the plaintiff was a resident of New York, who brought a defamation case in New Hampshire against the defendant magazine, which was an Ohio corporation. *Id.* at 772. The only connection that the defendant had to New Hampshire was that the magazine had circulation in New Hampshire. *Id.* The U.S. Supreme Court held that the publisher of a national magazine was subject to jurisdiction in every location in which it was circulated, even if "the bulk of the harm done to petitioner occurred outside [the forum]." *Id*. at 780. In addition, in Keeton, the only connection necessary that the publisher had to the forum state was the circulation and sale of the publication. It is indisputable that the defamatory statements were published in this judicial district, Comp. ¶ 8, 9, thereby affording the Court personal jurisdiction in this case.

B.  **Plaintiff Has Properly Pled Causes of Action**

First, a complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted).

---

[5] https://floridapolitics.com/archives/313326-elizabeth-warren-staffs-up-in-florida

Under Florida Law, the elements of defamation are, "''(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) the falsity of the statement caused injury to plaintiff." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006. Defendants incredulously contend (1) that their tweets were not about the Plaintiff and (2) that the tweets were not defamatory.

### 1. Defendants' Tweets were About Plaintiff

It is well-settled that Plaintiff need not to have been expressly named in the defamatory publications for them to have been "of and concerning" Plaintiff.

> It is unnecessary for an article to name a person in order for it to be "of and concerning" that person. If it can be shown either that the implication of the article was that the plaintiff was the person meant or that he or she was understood to be the person spoken about in light of the existence of extrinsic facts not stated in the article, then it is "of and concerning" the plaintiff as though the plaintiff was specifically named. SACK ON DEFAMATION § 2:9:1 at 2-149 [4th ed 2012]

The Eleventh Circuit agrees. "For one thing, nowhere in the article is Horsley mentioned either by name or ascertainable implication. To be actionable, "the [allegedly] defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002) (emphasis added). Other courts have also expounded on this fundamental principle. "Further, "[i]t is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant." *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 2015 NY Slip Op 06409, ¶ 5, 132 A.D.3d 82, 90-91, 15 N.Y.S.3d 36, 43 (App. Div. 1st Dept.).

Defendants' argument that their tweets were not about Plaintiff is bizarre and ridiculous, at best. Had they simply pointed out that Trayvon Martin would have been 25 on February 25, 2020, then their argument may have held water. However, each of them went much further –

clearly talking about Plaintiff without saying his name. George Zimmerman is associated with the death of Trayvon Martin; this is beyond dispute!

Buttigieg also tweeted, "*How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?*." Comp. ¶ 8. Warren tweeted, "*We need to end gun violence and racism*." Comp. ¶ 9. The fact that these statements were juxtaposed next to Trayvon Martin, ad that it is nearly universally known that Plaintiff had shot Trayvon Martin in , but was acquitted on self-defense grounds, the only reasonable implication is that these tweets are "of and concerning" the Plaintiff.

### 2. Defendants' Tweets were Defamatory

"Mixed expression of opinion, however, is not constitutionally protected and exists when a published statement containing an opinion is made and is not based on facts set forth in the article, or assumed facts and, therefore, implies the existence of some other undisclosed facts on which the opinion is based. *Demby v. English*, 667 So. 2d 350, 355 (Fla. Dist. Ct. App. 1995). "n determining whether the statement is one of pure or mixed opinion, the [*984] court must examine the words used, together with the totality of the circumstances and the context, within which it was published." *Sullivan v. Barrett*, 510 So. 2d 982, 983-84 (Fla. Dist. Ct. App. 1987).

Here, despite Defendants' best efforts to try to couch their tweets as "pure opinion," in the context of the entire tweets, it is clear that they were instead asserting false facts about Plaintiff. While the statements, "*How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?*" And "*We need to end gun violence and racism*" <u>on their own</u> may qualify as pure opinion, the fact they are juxtaposed next to a tweet about Trayvon Martin's birthday converts them to statements of fact concerning Plaintiff. This is

because any objective reader of the tweet would understand it as such. This is a matter of common sense. The only rational understanding of Defendants' tweets is that Defendants are directly referring to Plaintiff as engaging in "white supremacy, gun violence, prejudice…" as well as "racism."

Defendants next contend that the referring to Plaintiff as engaging in "white supremacy, gun violence, prejudice…" as well as "racism" is not defamatory. However, they fail to come up with a single controlling Florida or Eleventh Circuit case that this is the case.

This is particularly true with regard to Buttigieg's reference to Plaintiff as a white supremacist. Whether an individual is a white supremacist is an objectively verifiable statement of fact. Does the individual belong to any groups that champion white supremacy? Has the individual ever publicly championed white supremacy? If so, then that individual is a white supremacist. In Plaintiff's case, he has done nothing close to that, since he is not a white supremacist. Plaintiff is half-Peruvian, so being a "white supremacist" is not really even an option for him. Indeed, "white supremacy" is even formally defined by Merriam-Webster as "a person who believes that the white race is inherently superior to other races and that white people should have control over people of other races."[6] Thus, this is a statement of concrete fact, not unverifiable opinion.

Furthermore, whether Plaintiff engaged in "gun violence" is also an objectively verifiable fact. Here, Plaintiff Zimmerman was acquitted of all charges stemming from the Trayvon Martin shooting, so objectively, and under the eyes of the law, he did not engage in "gun violence," but instead justifiable self defense.

---

[6] https://www.merriam-webster.com/dictionary/white%20supremacist.

Thus, despite Defendants' best attempts to twist and couch their tweets to try to escape liability for their actions, their tweets were clearly defamatory under Florida law.

### 3. Plaintiff Sufficiently Pled Actual Malice

Plaintiff has more than met the threshold for pleading actual malice. The Complaint unquestionably alleges facts sufficient to "give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

First and foremost, the Complaint sets forth that Plaintiff was acquitted of all charges regarding the Trayvon Martin shooting. Comp. ¶ 17. Defendants clearly knew this as well. Thus, from this alone, they must have known that Plaintiff did not engage in "gun violence," since he was acquitted of all charges. The same is true for their allegations of "white supremacy" and "racism." If Plaintiff had acted out of "white supremacy" and "racism" in shooting Trayvon Martin, as opposed to self-defense, he surely would have been convicted. Defendants therefore, at a minimum, recklessly disregarded the truth.

The Complaint also points to other avenues where Defendants knew or should have known that their allegations were blatantly false. These include (1) the film and book entitled *The Trayvon Hoax: Unmasking the Witness Fraud that Divided America*, Comp ¶ 19, (2) the widely publicized lawsuit filed by Plaintiff for malicious prosecution and related claims, Comp. ¶ 20, and (3) the facts that Defendants "were part of a leftist/Democrat political partisanship scheme or parallel concerted action to injure and destroy Plaintiff Zimmerman's reputation and profession." Comp. ¶ 30. In conjunction with the fact that Plaintiff Zimmerman was acquitted of all charges, and therefore innocent in the eyes of the law, Defendants clearly acted with actual malice.

## IV. CONCLUSION

For these compelling reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be denied and this case allowed to proceed to discovery forthwith. This is a highly charged period in our nation's history, but the law must prevail. Defendants are not above the law, and they must be held to legally account for their actions without regard to their professed elite political status.

As our great Founding Father and second American president, John Adams, declared just days before signing the Declaration of Independence, the new country was conceived to be a nation of laws and not men. When Plaintiff was held to account, he was acquitted of any offense. Defendants must now also be held to account and have their day in court a before a jury of their peers.

There can be no excuse to harm an innocent man by calling him, falsely, a white supremacist – a statement of fact -- and smearing him with charges that he engages in gun violence, when he was found by a jury of his peers to have acted in self-defense. This is particularly actionable when the Defendants knew of this acquittal and thus possessed the requisite actual malice. Their cynical, irresponsible and lawless intent was to gain votes among some in Florida's African American community, where they were doing poorly in the polls, at Mr. Zimmerman's expense, a man who has been smeared to such an extent that a person, now serving time, attempted to kill him in the past. Defendants' cheap defamatory acts thus subjected Plaintiff to more death threats if not actual violence, endangering his life yet again.

Plaintiff respectfully requests oral argument on Defendants' non-meritorious motion which must be denied.

Dated: June 26, 2020                                                  Respectfully submitted,

          */s/ Larry Klayman*
          Larry Klayman, Esq.
          KLAYMAN LAW GROUP P.A.
          7050 W. Palmetto Park Rd
          Boca Raton, FL, 33433
          Tel: 561-558-5536
          Email: leklayman@gmail.com

          Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of June, 2020, a copy of the foregoing was served by electronic filing upon counsel listed on the Notice of Electronic Filing

          */s/ Larry Klayman*