UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEORGE ZIMMERMAN,

      Plaintiff,

v.                                 Case No: 8:20-cv-1077-CEH-CPT

PETE BUTTIGIEG and ELIZABETH
WARREN,

      Defendants.

_____/

## ORDER

      This matter comes before the Court upon the Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 17], Plaintiff's Opposition [Doc. 20], and Defendants' Reply [Doc. 27]. According to Defendants, the Court lacks personal jurisdiction in this case and Plaintiff fails to state a claim on which relief can be granted. [Doc. 17]. Having considered the motion and being fully advised in the premises, the Court will grant, without prejudice, Defendants' Motion to Dismiss Plaintiff's Complaint.

## I.   BACKGROUND[1]

      On February 26, 2012, twenty-nine year-old George Zimmerman discharged a single shot to stop seventeen year-old Trayvon Martin from assaulting him, following an incident between the two at the Retreat at Twin Lakes townhome community in

---

[1] The following statement of facts is derived from Plaintiff's Complaint [Doc. 1], the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

Sanford, Florida where Zimmerman lived and was a member of the neighborhood watch. [Doc. 1-1 ¶¶ 10, 11, 14]. Zimmerman was charged with second-degree murder and acquitted by a jury on July 13, 2013. *Id.* ¶¶ 16, 17. He and his family have been the target of death threats ever since. *Id.* ¶ 17. Due to the massive publicity after the shooting, the nationwide protests demanding his arrest without cause, the subsequent 2013 trial and his acquittal of all charges, and the acts of protest and violence that continue to this day in the name of Trayvon Martin, Zimmerman alleges that his name is 100% synonymous with Trayvon Martin and the incident that resulted in Martin's death. *Id.* ¶ 21.

The actions giving rise to this lawsuit occurred on February 5, 2020. *Id.* ¶¶ 22, 23. That day, defendant Pete Buttigieg made the following tweet:



*Id.* ¶¶ 8, 22; p. 27. Buttigieg is an American politician and was a 2020 candidate for the Democratic Party nomination for President of the United States of America. *Id.* ¶ 5. He allegedly had 1,600,000 followers on the social media platform, Twitter, and tweeted multiple times per day in order to build political support—among other things. *Id.* Buttigieg's tweet implied that Trayvon Martin's death was a result of "*white*

2

*supremacy, gun violence, prejudice, and fear,"* all of which the public would understand as referring only to George Zimmerman, who is known to have caused Trayvon Martin's death by shooting him, even though Buttigieg knew that the 2013 trial jury acquitted Zimmerman of all charges. *Id.* ¶ 22. This disparaged Zimmerman and further subjected him to hate. *Id.* In only three days, the tweet received 42,000 likes, 13,300 replies, and 6,600 retweets as well as national media coverage, including in the state of Florida—which is the third largest state and crucial to win the 2020 presidential Democratic primary and general presidential election. *Id.* ¶¶ 5, 8.

Elizabeth Warren, a nationally known public figure and 2020 candidate for the Democratic party nomination for President of the United States, also tweeted about Trayvon Martin that day. *Id.* ¶¶ 6, 9, 23. She tweeted the following statement to her 3,600,000 followers on Twitter:



*Id.* ¶ 9, 23; p. 29. In only three days, the tweet received 7,300 likes and 1,000 retweets, as well as national media coverage, including in the state of Florida. *Id.* ¶ 9. Like Buttigieg, Warren was very knowledgeable of the facts surrounding the 2012 incident in which Trayvon Martin died and that Zimmerman's name was synonymous with that incident. *Id.* ¶ 23. The tweet was defamatory because it characterized Martin's

death as the result of gun violence, even though Warren was aware that Zimmerman's act was one of self-defense and that he was acquitted of all charges based on the evidence. *Id.*

Both Buttigieg and Warren, in sending the respective tweets, acted with actual malice towards Zimmerman, because—among other things—they knew of his acquittal. *Id.* ¶¶ 25-33. According to Zimmerman, they had a preconceived plan to discredit and destroy him as part of their political agenda to garner votes in the black community before the 2020 election. *Id.* ¶ 33. In fact, Buttigieg had expressed concern over the well-documented lack of electoral support for his candidacy among African American voters in polling and Warren also lacked the support of African American voters, which she was seeking. *Id.* ¶¶ 1, 5-6.

Zimmerman filed this action against Buttigieg and Warren[2] asserting three claims—general defamation, defamation by implication, and defamation per se—against both. *Id.* Defendants, moving jointly, seek dismissal of the complaint for lack of personal jurisdiction and for failure to state a claim. [Doc. 17]. Among other things, they contend that the tweets contain no statement against Zimmerman personally, are pure opinion and that Zimmerman has not plausibly alleged malice. *Id.* at p. 3. Zimmerman, however, argues that personal jurisdiction exists because the tweets were accessible in Florida. [Doc. 20 at p. 3]. Additionally, he argues that it is clear that the tweets were of and concerning him as it is universally known that he shot Trayvon

---

[2] The action was filed in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, but removed to this Court by Defendants pursuant to 28 U.S.C. § 1332(a). [Doc. 1].

Martin. *Id.* at p. 2. In reply, Buttigieg and Warren argue that the accessibility of tweets in Florida does not satisfy the long-arm statute nor comport with the requirements of due process. [Doc. 27 at p. 2]. They also raise various arguments as to the sufficiency of the allegations to plausibly state a claim for relief, including that the tweets do not concern Zimmerman's role in Martin's death. *Id.* at p. 4.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Similarly, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Complaints that violate either of these rules are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). When faced with a shotgun pleading, a court should strike the complaint and instruct the plaintiff to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Federal Rule of Civil Procedure 12(b) sets forth additional grounds on which a court may dismiss an action. Pursuant to that rule, a court may dismiss an action if, among other reasons, the Court lacks personal jurisdiction over the defendant(s) or if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(2), (6).

Personal jurisdiction "concern[s] the extent of a court's power over the parties and the fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). It "represents a restriction on judicial power … as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570, 143 L. Ed. 2d 760 (1999) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, (1982)). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A two-step analysis is required; the court must first determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute and then examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). A plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction." *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 142 (11th Cir. 2005) (quoting *Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990)). However, a defendant contesting the complaint's allegations concerning jurisdiction must present affidavits in support of his position. *Id.* (quoting *Acquadro v. Bergeron,* 851 So.2d 665, 671 (Fla.2003)). "The

district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris*, 843 F.2d at 492.

On a motion to dismiss for failure to state a claim, the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). It is well established that "[a] complaint must not be dismissed unless it is shown that plaintiff can prove no set of facts in support of this claim, which would entitle him to relief." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579 (11th Cir. 1986). To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " *Gill*, 941 F.3d at 514.  A document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) (citing *Maxcess, Inc. v. Lucent Techs., Inc.,* 433 F.3d 1337, 1340 n. 3 (11th Cir.2005)).

## III.   DISCUSSION

Zimmerman alleges claims for defamation generally, defamation by implication, and defamation *per se*. Defendants contend that they are not subject to the jurisdiction of Florida courts. They also assert various grounds on which the complaint should be dismissed with prejudice, for failing to state a claim on which relief can be granted. "As a general rule, courts should address issues relating to personal

jurisdiction before reaching the merits of a plaintiff's claims." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997); *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890 (11th Cir. 1983) ("Since the district court was without in personam jurisdiction, we do not reach the merits of the negligence issue or the cross-appeal."). Before the Court addresses these issues raised in the motion to dismiss, it will address, *sua sponte*, Zimmerman's failure to comply with Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure, which transforms the complaint into a shotgun pleading and subjects it to dismissal.

    a. Shotgun Pleading

    The Eleventh Circuit has identified four general types of shotgun pleadings. *Weiland*, 792 F.3d at 1322–23. They include: "(1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which." *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016) (citing *Weiland*, 792 F.3d at 1321–23). Ultimately, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint

10

that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

The complaint here is a shotgun pleading as it fails to separate into a different count each cause of action or claim for relief against each defendant. Based on the facts alleged, Buttigieg and Warren tweeted from their individual twitter accounts. In addition, while the tweets both commemorate Trayvon Martin's birthday and addressed societal issues surrounding his death, they are not the same. Nevertheless, Zimmerman has asserted each count against both defendants. In doing so, the complaint lumps all allegations against each defendant together. This is an unacceptable form of establishing a claim for relief. Additionally, Rule 10(b) mandates that "each claim founded on a separate transaction or occurrence … be stated in a separate count …." Fed. R. Civ. P. 10(b). The Court will therefore dismiss the complaint as a shotgun pleading.[3]

b. Personal Jurisdiction

Zimmerman has also failed to establish personal jurisdiction over Buttigieg and Warren. In assessing personal jurisdiction, the Court first considers whether personal jurisdiction exists over a nonresident defendant under Florida's long-arm statute, and, if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Louis Vuitton*

---

[3] The Court also questions whether these defendants should even be joined in the same lawsuit as there is no indication that the tweets arose out of the same transaction or occurrence. It is too early to determine if the questions of law or fact will be common to both defendants. *See* Rule 20, Fed. R. Civ. P.

*Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

       i.    *Long-arm Jurisdiction*

As to the reach of Florida's long-arm statute, it is well established that federal courts are required to construe it as would the Florida Supreme Court as it involves a question of Florida law. *Id.* The Eleventh Circuit has explained that:

> A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, *id.* § 48.193(2).

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352. General jurisdiction, on the other hand, exists when a defendant "is engaged in substantial and not isolated activity within this state … whether or not the claim arises from that activity." *Id.* (quoting Fla. Stat. § 48.193(2)).

      *ii.*   *Due Process*

If long-arm jurisdiction exists, the Court must then consider whether the exercise of jurisdiction would offend "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.' " *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (same). "The Due Process Clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013) (quotation omitted).

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Madara*, 916 F.2d at 1516. This requirement is satisfied if the defendant has "purposefully directed" his activities at the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* (citing cases). Once this has been established, the court considers various factors in determining whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Id.* at 1517 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)). These factors include:

the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies.

*Id.* (citing *Burger King,* 471 U.S. at 477).

iii.    *Analysis*

Defendants argue that neither of them has a sufficient personal connection to the State of Florida as the posting of defamatory material on a website, by itself, does not constitute the commission of a tortious act within Florida under that state's law. [Doc. 17 at p. 8]. Zimmerman contends that the long-arm statute has been satisfied as the tweets were widely covered in the national media, including in Florida, and accessed in Florida. [Doc. 20 at p. 3]. In response, Defendants argue that Zimmerman has not alleged that the tweets were accessed by a third party in Florida. [Doc. 27 at p. 2 n.1].

"Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida '*for any cause of action arising from … [c]omitting a tortious act within [Florida].*' " *Louis Vuitton*, 736 F.3d at 1353 (quoting Fla. Stat. § 48.193(1)(a)(2)). "[T]he alleged tortfeasor's 'physical presence [in Florida] is not required.' " *Horizon*, 421 F.3d at 1168 (quoting *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla.2002)). Jurisdiction under the long–arm statute may be triggered where there are allegations about an out-of-state defendant's electronic or written communications

14

into Florida and the cause of action arises from those communications. *Id.* (citing *Wendt*, 822 So.2d at 1260 and *Acquadro v. Bergeron*, 851 So.2d 665, 671 (Fla.2003)).

The parties have both discussed the Florida Supreme Court's ruling on a very similar case, *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010). In that case, defendant, operator of a noncommercial website—on which she posts information about consumer-related issues—made a post about one of the websites operated by plaintiff employment recruiting and internet advertising company. *Id.* at 1203. The post included a listing of affiliates of plaintiff and listed Florida addresses. *Id.* Additionally, exhibits attached to the complaint indicated that several of the comments posted by third parties appeared to be from Florida. *Id.* Plaintiff brought suit against Defendant in federal court in Florida, and Defendant—a resident of the State of Washington—moved to dismiss for lack of personal jurisdiction. *Id.* at 1204. The court granted the motion, concluding that "there is no evidence that Marshall specifically targeted Florida residents." *Id.* at 1205. The dismissal was appealed, and the Eleventh Circuit certified the following question to the Florida Supreme Court:

> whether a nonresident commits a tortious act within Florida for purposes of the long-arm statute when he or she makes allegedly defamatory statements about a company with its principal place of business in Florida by posting those statements on a website, where the website posts containing the statements are accessible and accessed in Florida

*Id.* at 1206.

The court answered in the affirmative, concluding that "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida

constitutes an 'electronic communication into Florida' when the material is accessed

(or 'published') in Florida." *Id*. In doing so, the Court pointed out that the question of

whether a posting on a website constituted an electronic communication into Florida

was a more difficult one than presented by telephone calls, e-mails, chat rooms, and

facsimiles—which are all directed by the alleged tortfeasor into a specific forum. *Id*. at

1210. The Court reasoned further:

> In the context of the World Wide Web, given its
> pervasiveness, an alleged tortfeasor who posts allegedly
> defamatory material on a website has intentionally made
> the material almost instantly available everywhere the
> material is accessible. By posting allegedly defamatory
> material on the Web about a Florida resident, the poster has
> directed the communication about a Florida resident to
> readers worldwide, including potential readers within
> Florida. When the posting is then accessed by a third party
> in Florida, the material has been "published" in Florida and
> the poster has communicated the material "into" Florida,
> thereby committing the tortious act of defamation within
> Florida.

*Id*. at 1214–15. Thus, the court explained, it was necessary to review the complaint to

determine whether it stated a cause of action for libel, including publication of the

statement in Florida. *Id*. at 1214.

The Eleventh Circuit has since followed this reasoning, though in an unreported

decision, in finding that personal jurisdiction did not exist based on the plaintiff's

allegations as to defamation. In that case, *Catalyst Pharm., Inc. v. Fullerton*, 748 F. App'x

944 (11th Cir. 2018), the "amended complaint alleged that Fullerton 'published ...

defamatory Statements in Florida to Catalyst and third parties in Florida via [the

Message Board] dedicated to discussions regarding Catalyst,' " and that "these

Statements were accessed by Catalyst and others in Florida.' " *Id.* at 947. The Eleventh Circuit affirmed the district court's dismissal for lack of personal jurisdiction, reasoning that the complaint failed to make a showing on an essential element of its case, that is, that the statements were accessed in Florida. *Id.* at 947. According to the appellate court, "[w]hile the[] allegations may establish that Fullerton's statements were accessible in Florida, they do not point to any facts showing the statements were accessed in Florida." *Id.*

Applying the rationale of the Florida Supreme Court in *Internet Sols.*, the Court finds that Zimmerman has not pleaded sufficient facts to show that Defendants committed a tortious act within Florida such that long-arm jurisdiction exists. The complaint alleges merely that Defendants' tweets received national media coverage, and in particular in the state of Florida, including but not limited to Polk County. [Doc. 11 ¶¶ 8, 9, 52, 63, 76]. There is not one allegation that either tweet was directed to a specific person in Florida[4] or accessed by a person in this forum. The mere fact that the material was accessible in Florida is not enough to plead the publication element of defamation, and therefore, the commission of a tortious act in this state. As such, the claim fails at this threshold level and provides an additional basis for

---

[4] The Court notes that Warren's tweet is specifically directed to Trayvon Martin's mother, Sybrina Fulton, by use of "@SybrinaFulton," which is in blue font and indicates she is a user of the platform. [Doc. 1-1 at p. 29]. Additionally, "Trayvon's family and friends" are also referenced in the tweet. This distinguishes Warren's Tweet from that of Buttigieg, which does not reference any specific person or group. However, there is still no indication that Sybrina Fulton and/or Trayvon's family and friends were residing in Florida at the time of the tweets, and the Court will not infer such.

dismissal, without prejudice. *See Morris v. SSE, Inc.*, 843 F.2d 489, 496 n.11 (11th Cir. 1988) ("Dismissal for lack of personal jurisdiction is without prejudice and the plaintiff still may sue the defendant in a forum where personal jurisdiction can be obtained."). Having determined that long-arm jurisdiction does not exist, the Court need not address whether the exercise of jurisdiction would offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

   c.  Stating a cause of action

Even if the Court had personal jurisdiction over Defendants, and Zimmerman had complied with Rules 8(a)(2) and 10(b) of the Federal Rules of Civil Procedure, the Court finds that he has failed to state a claim against Buttigieg and Warren for defamation. Under Florida law, defamation generally has these five elements: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008)). Defamation by implication is deemed to occur (i) where there is a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (ii) where a defamatory implication is created by omitting facts. *Id.* at 1269 (quoting *Rapp*, 997 So. 2d at 1108; *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016) (stating same). This form of defamation "also requires proof of actual malice because it is subsumed within the tort of defamation ... [so] all of the protections of defamation law ... [are] extended to

18

[it]." *Klayman*, 650 F. App'x at 749 (quotation marks omitted) (first two alterations in original). Lastly, defamatory statements are of a per se character, if "when, 'considered alone without innuendo,' they contain (i) charges that a person has committed an infamous crime, or (ii) has contracted an infectious disease, or (iii) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (iv) to injure a person in his trade or profession." *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955); *Loeb v. Geronemus*, 66 So. 2d 241, 244 (Fla. 1953) ("Only certain well-defined classes of imputation as to crime, disease, particular unfitness for office, etc., or unchastity, have been deemed [defamatory] per se."); *Nodar v. Galbreath*, 462 So. 2d 803, 805 (Fla. 1984). "[W]ith defamation per se 'the law presumes malice in their utterance' making it unnecessary to prove express malice." *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010) (quoting *Abraham v. Baldwin,* 52 Fla. 151, 42 So. 591, 592 (1906)); *Scott v. Busch*, 907 So. 2d 662, 666 (Fla. 5th DCA 2005) ("defamation *per se* presumes malice"). Having addressed the various species of defamation alleged by Zimmerman, the Court now turns to the specific grounds for dismissal.

       i.   *Lack of Publication*

    The lack of allegation that the tweets were published renders the complaint insufficient to state a claim for defamation and subjects the complaint to dismissal. "Because the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability." *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1017 (Fla. 2001). Publication requires that the statement be

19

"communicated to a third person." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007); *Tyler v. Garris*, 292 So. 2d 427, 429 (Fla. 4th DCA 1974) ('the defamatory matter must have been communicated to some third person in order for same to be actionable."). For instance, in *Owner's Adjustment Bureau, Inc. v. Ott*, 402 So. 2d 466, 467 (Fla. 3d DCA 1981), the court reversed a final judgment and summary judgment on liability, finding there was "no proof of publication, a necessary predicate to a finding of defamation and liability." The court reasoned that there was "absolutely no showing in the record that the persons and entity to which the copies [of the defamatory letter] were purportedly sent ever received the letter and, it necessarily follow[ed], no showing that they read the letter." *Id.* According to the court:

> Since the interest protected is that of reputation, it is essential to tort liability for either libel or slander that the defamation be communicated to some one other than the person defamed. . . . It is not enough that the words are uttered in the presence of others unless they are in fact overheard.

*Id.* As this Court noted in its discussion on personal jurisdiction, the complaint does not contain any allegation that either Buttigieg or Warren's tweet was communicated to a third-party. Though each tweet was accessible to millions of twitter users that followed each defendant, just as the words uttered in the presence of others was not enough unless overheard, it is not enough unless they were accessed by a third-party. Again, all three counts fail to state a cause of action for this reason.

ii.     *Lack of specific reference to Zimmerman*

Defendants argue that their tweets are not about Zimmerman, do not mention his name at all, nor imply anything about him. [Doc. 17 at p. 13]. This argument relates to the second element of the tort, falsity, as the false statement must be of or concerning the plaintiff. *See Lopez v. Ingram Micro, Inc.*, No. 95-2004-CIV-NESBITT, 1997 WL 401585, at *4 (S.D. Fla. Mar. 18, 1997) (noting that defamation in Florida requires that the defendant publish a false statement of fact of or concerning the plaintiff); *Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1484 (S.D. Fla. 1987) (stating that in Florida "the plaintiff must show that the defendant made a false statement of fact of or concerning the plaintiff"), *aff'd*, 865 F.2d 1272 (11th Cir. 1988). Certainly, this element applies to all forms of the tort.

The Court agrees that Zimmerman's name is nowhere mentioned in either tweet. [Doc. 1-1 pp. 27, 29]. However, it does not appear that there is a strict requirement, in Florida, that the author of the defamatory publication specifically identify a person by name for the statement to be actionable. The case law merely indicates that the statement must concern a public official or a private person. *See Jews For Jesus,* 997 So. 2d at 1106. In fact, defamation by implication is premised not on direct statements. *Id.* at 1107-08. Certainly, a tortfeasor could juxtapose a series of facts in such a way that a specific person is identifiable even though that person's name has not been used. The claim for defamation by implication in Count II is therefore not subject to dismissal on this basis. Moreover, the Court will not impose such a requirement, in the absence of Florida authority on the issue, as to either the claim for

21

general defamation in Count I or defamation by implication in Count II. Even then, the complaint alleges generally that "[t]he name 'George Zimmerman' is 100% synonymous with Trayvon Martin and the incident that resulted in the death of Trayvon Martin." [Doc. 1-1 ¶¶ 21, 23]. Taking this allegation as true, Zimmerman plausibly alleges that the tweets, when considered as a whole, included an implied or indirect reference to him due to the incident resulting in Trayvon Martin's death. As such, the Court disagrees that the failure to name Zimmerman in the tweets subjects the claims to dismissal.

### iii.    *True Statements, Questions, and Pure Opinions*

Defendants' next argument, that the tweets are true statements, questions, and pure opinion, is a challenge to the falsity element of defamation. "True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner*, 879 F.3d at 1262. Reviewing the tweets, the Court agrees that they both make truthful statements regarding the untimely nature of Trayvon Martin's death and the need to end societal issues that plague this country. [Doc. 1-1 at pp. 27, 29]. However, Zimmerman alleges that because of his role in Martin's death, these tweets promote the idea that he killed Trayvon Martin because of racism or white supremacy. *Id.* ¶¶ 22, 24. He also alleges that a jury acquitted him based on evidence he was acting in self-defense. *Id.* While the statements, taken alone, are true, the complaint plausibly alleges that when taken together they could suggest what Zimmerman contends. *See*

22

*Rapp*, 997 So. 2d at 1106 ("literally true statements can be defamatory where they create a false impression.").

Moreover, construing the allegations of the complaint as true, it is not clear that the tweets constitute pure opinion.

> Under Florida law, a defendant publishes a "pure opinion" when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public. *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. Dist. Ct. App. 1981). Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication. *Id.*; *Stembridge v. Mintz*, 652 So.2d 444, 446 (Fla. Dist. Ct. App. 1995).

*Turner*, 879 F.3d at 1262-63. "[A] speaker cannot invoke a 'pure opinion' defense, [however,] if the facts underlying the opinion are false or inaccurately presented." *Deeb v. Saati*, 778 F. App'x 683, 687–88 (11th Cir. 2019).

Florida's Second District Court of Appeal has further explained that:

> In determining whether an alleged [defamatory] statement is pure opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published.

*Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). In this case, Zimmerman alleges that the American public is very knowledgeable of the facts

surrounding the 2012 incident in which Trayvon Martin died. [Doc. 1-1 ¶ 21]. This appears to support a finding that Buttigieg and Warren offered their opinions based on facts available to members of the public. However, it is not clear at this stage of the litigation that the facts underlying the conclusions as to white supremacy, racism, prejudice, and fear are available to the public, such that they transform the entirety of the statements into ones of mixed expression. Because the Court must construe the statements in their totality, including the circumstances surrounding the publication, and must examine all the words used in the publication, this issue is best determined on a motion for summary judgment. *Hay*, 450 So. 2d at 295.

> iv.   *Plausibility of Malice*

Buttigieg and Warren also allege that Zimmerman has not and cannot plead facts rendering plausible the allegations as to malice. [Doc. 17 at p. 18]. Malice is an element of both the general defamation and defamation by implication claims and is presumed for claims of defamation *per se*. *Rapp*, 997 So. 2d at 1108; *Klayman*, 650 F. App'x at 749; *Lawnwood Med. Ctr.*, 43 So. 3d at 727. A defamatory statement is made with "actual malice" if it was made with knowledge of its falsity or with a reckless disregard as to whether it was true or not. *Miami Herald Pub. Co. v. Ane*, 458 So. 2d 239, 241 (Fla. 1984) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). The complaint alleges that Buttigieg and Warren's tweets implied that Zimmerman had killed Trayvon Martin because Zimmerman is racist or a white supremacist, or due to other like reasons, even though both were aware that he was acquitted of all charges based on evidence that he acted out of self-defense. [Doc. 1-1

24

¶¶ 20, 21, 22, 23, 24, 33]. Based on the allegations of the complaint, taken as true, Count I and Count II sufficiently plead that Buttigieg and Warren knew the falsity of what their respective tweets implied and therefore acted with malice in publishing them.

> ### v. *Defamation Per Se Claim*

Lastly, Defendants argue that the defamation *per se* claim should fail because it requires too many inferential steps to get to the conclusion that the tweets accuse him of murder. Admittedly, the complaint expressly states that "[t]hese statements are *per se* defamatory because they falsely accuse . . . Zimmerman of having committed a felony crime." [Doc. 1-1 ¶ 79]. However, the complaint also states that the "statements . . . subject him to hatred, distrust, ridicule, contempt, and disgrace." *Id.* ¶ 78]. As the Court noted above, defamation *per se* is not confined to statements that someone committed a crime, as statements that tend to subject a person to hatred, distrust, ridicule, contempt or disgrace can suffice. *Adams*, 84 So. 2d at 551. Certainly, a statement that attributes racist and white supremacist attributes to someone could subject that person to such harm. According to the complaint, Buttigieg's tweet suggests that Trayvon Martin's death resulted from either "white supremacy, gun violence, prejudice, or fear." [Doc. 1-1 at p. 27]. Warren's tweet allegedly places blame for Trayvon Martin's death on "gun violence and racism." *Id.* at pp. 29. The complaint therefore pleads an additional basis for defamation *per se* liability.

## IV.   CONCLUSION

In sum, the complaint contains deficiencies that subject it to dismissal as a shotgun pleading. Personal jurisdiction over Defendants has not been established, as Zimmerman has not sufficiently alleged that either Buttigieg or Warren committed a tortious act in this state.  Additionally, Zimmerman has failed to state a cause of action by failing to sufficiently allege publication, an essential element of defamation. The complaint will be dismissed, without prejudice, for these reasons.  Accordingly, it is

**ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 17] is **GRANTED**, **without prejudice**. Plaintiff may file an Amended Complaint on or before March 9, 2021, which cures the deficiencies discussed in this Order. Failure to file the amended complaint within the time provided will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on February 23, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

26