**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| GEORGE ZIMMERMAN, | |
| Plaintiff, | |
| | Case No: 8:20-cv-1077-CEH- CPT |
| v. | |
| PETE BUTTIGIEG and ELIZABETH WARREN, | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants Pete Buttigieg ("Buttigieg") and Elizabeth Warren ("Warren") request this Court dismiss the Amended Complaint (Doc. 39) of Plaintiff George Zimmerman ("Zimmerman"), and as grounds therefore state:

## I.     INTRODUCTION

This case is about two unrelated tweets, made separately by (at the time) rival candidates for nomination for federal office, on what should have been Trayvon Martin's twenty-fifth birthday. On their face, these tweets independently and distinctly honor Martin's life, express grief at his premature death, and opine that the Nation should end the scourges of racism and gun violence and create a world safe for children. Nothing more. They neither mention Zimmerman by name nor refer to him. Zimmerman's only basis for alleging that the tweets refer to him is that the tweets separately refer to Trayvon Martin, because, according to Zimmerman, any mention of Martin is "100% synonymous" with a mention of Zimmerman.

At bottom, then, Zimmerman asserts that Martin no longer has any independent existence outside of Zimmerman and so any mention of Martin, including but not limited to the circumstances of his death, is automatically *about* Zimmerman. (Doc. 39 at ¶ 5 ("George Zimmerman's name is 100% synonymous with Trayvon Martin *and* the incident that resulted in Martin's death.") (emphasis added)). Thus, according to Zimmerman, anyone who references Martin's death and the broad social issues of racism, prejudice, or gun violence necessarily is asserting that Zimmerman *murdered* Trayvon *because* he acted with racist animus. Zimmerman thus aims not only to chill speech about him, but any speech about Trayvon Martin.

1

Zimmerman goes further still. Not only does he claim that any tweet about Trayvon Martin is necessarily a tweet about him, which Defendants deny, but also that, because he was acquitted of the charge of murder, it is a legal impossibility for the circumstances surrounding Martin's premature death to implicate issues of racism and prejudice, and any statement to the contrary is "false" within the meaning of defamation law. (Doc. 39 at ¶ 18). But perceptions of racism and prejudice are matters of opinion rather than legal charges, and Zimmerman has not been (and cannot be) acquitted of opinions. Accordingly, even if the two distinct tweets, made on Defendants' separate Twitter accounts, were *about* Zimmerman *and did accuse* him of racism, gun violence, prejudice, fear, or white supremacy as he alleges, such statements would be constitutionally-protected *opinions* that are not actionable as a matter of law.

On February 23, 2021, the Court dismissed Zimmerman's original Complaint (Doc. 1-1) because it was a shotgun pleading and he had not pleaded sufficient facts to show that Defendants were subject to the Court's jurisdiction under Florida's long-arm statute. (Doc. 38 at 10-18, 26). Having found that Zimmerman failed to plead facts sufficient to satisfy the long-arm statute, the Court found it "need not address whether the exercise of jurisdiction would offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* at 18.

In dismissing the original Complaint without prejudice, the Court allowed Zimmerman to file an amended complaint "which cures the deficiencies discussed in this Order." *Id.* at 26. On March 9, 2021, Zimmerman filed his Amended Complaint.

(Doc. 39). However, the Amended Complaint suffers from the same fatal shotgun pleading flaws as Zimmerman's original Complaint. In addition, exercising jurisdiction here would offend the Due Process Clause of the Fourteenth Amendment. Finally, the Amended Complaint should be dismissed for failure to allege actual malice as required to plead Counts I and II, and for failure to state a claim for defamation *per se* under Count III. For each of these reasons, the Amended Complaint must be dismissed.[1]

## II.    ZIMMERMAN'S ALLEGATIONS

The Amended Complaint is entirely rewritten from its original form. (*Compare* Doc. 1-1, *with* Doc. 39). The relevant factual allegations in the Amended Complaint are as follows: Defendants each separately and independently took to Twitter to honor Trayvon Martin on the day he would have been 25 years old had he not been shot and killed at age 17, and also to opine that the Nation should end the scourges of racism and gun violence and create a world safe for children. But the two tweets, made separately by the separate defendants, are markedly different.

## A.    Buttigieg Tweets a Remembrance of Trayvon Martin's Death and a Question.

In his tweet, Buttigieg made the factually true statement that February 5 was Trayvon Martin's birthday and that he would have been 25 on February 5, 2020. The remainder of Buttigieg's tweet makes no statements at all. Rather, it asked a question:

---

[1] If dismissal is not granted for any of the reasons above, the Court should order limited discovery and evidentiary hearing on personal jurisdiction under the long-arm statute before any further proceedings on the merits.

"How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?" He ended his short tweet with a hashtag, "#BlackLivesMatter." The tweet reads in its entirety:



Buttigieg's tweet does not mention Zimmerman, who nonetheless alleges that the tweet

> implied that Trayvon Martin's death was a result of '*white supremacy, gun violence, prejudice, and fear,*' all of which the public would understand as referring only to George Zimmerman, who is known to have caused Trayvon Martin's death by shooting him, even though Buttigieg knew that the 2013 trial jury acquitted Zimmerman of all charges.

(Doc. 39 at ¶ 10). According to Zimmerman, the tweet "disparaged Zimmerman and further subjected him to hate." *Id.* at ¶ 11.

**B.    Warren Expresses Her Sympathies to Trayvon Martin's Family and Friends and Expresses Her Opinion that "We" Need to End Gun Violence and Racism and Create a World Safe for Children.**

Warren also took to Twitter on what would have been Trayvon Martin's 25th birthday to "retweet" a tweet by Frederick Joseph, who had also noted Martin's birthday and premature death and posted pictures of him. In her "retweet," Warren expressed condolences to Martin's mother, family and friends, and her opinion that

---

[2] Pete Buttigieg (@PeteButtigieg), TWITTER (Feb. 5, 2020), https://twitter.com/petebuttigieg/status/122513519 1330521090?lang=en.

Trayvon "should still be with us today." She then expressed to her followers that "we" should work together to "end gun violence and racism" and "to build a world where all of our children—especially young Black boys—can grow up safe and free." Her retweet, below, speaks for itself:



As with Buttigieg's tweet, Warren's retweet does not say anything about Zimmerman. But Zimmerman alleges that "Warren's tweet was defamatory because it characterized Martin's death as the result of gun violence, even though Warren was aware that Zimmerman's act was one of self-defense and that he was acquitted of all charges based on the evidence." (Doc. 39 at ¶ 17). The Amended Complaint does not accuse Warren of implying that Martin's death was the result of racism or white

_____

[3] Elizabeth Warren (@ewarren), TWITTER (Feb. 5, 2020), https://twitter.com/ewarren/status/1225 271209903 955968?lang=en.

supremacy and instead only alleges that "Warren's tweet was defamatory because it characterized Martin's death as the result of gun violence." *Id*. It is not in dispute that Zimmerman shot and killed Trayvon Martin.

## C.   Zimmerman's Conclusory Allegations of Actual Malice

As was true in his original Complaint, Zimmerman does not so much as attempt to parse his allegations of actual malice among the Defendants about their distinct and separate tweets in his Amended Complaint. Instead, and in stark contrast to the four and a half pages of allegations he levied in his original Complaint (*see* Doc. 1-1 at ¶¶ 10-43), he alleges only that: "[b]oth Buttigieg and Warren, in sending the respective tweets, acted with actual malice towards Zimmerman, because—among other things—they knew of his acquittal," that Warren (but not Buttigieg) "was aware that Zimmerman's act was one of self-defense," and that both Defendants "had a preconceived plan to discredit and destroy him as part of their political agenda to garner votes in the [B]lack community before the 2020 election." (Doc. 39 at ¶¶ 17-19).

## III.   ARGUMENT

As a preliminary matter, the Amended Complaint must be dismissed as shotgun pleading in violation of Federal Rule of Civil Procedure 10(b), because it commits the same sins that resulted in this Court's *sua sponte* dismissal of the original Complaint. The Amended Complaint must also be dismissed under Rule 12(b)(2) for want of personal jurisdiction over Defendants.

In addition, particularly given the dramatically different allegations in the Amended Complaint, the Court should revisit its findings in its February 23 Order that Zimmerman had (in the original Complaint) plausibly alleged facts to support a finding of actual malice and a claim for defamation *per se*.[4]

Finally, even if the Court does not dismiss for any of the bases above, Defendants respectfully request in the alternative that the Court require resolution of any factual dispute as to whether Florida's long-arm statute is satisfied here before denying Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The Court concluded, in its February 23rd Order, that there is a factual dispute as to whether the tweets were *about* Zimmerman at all. If the tweets are not *about* Zimmerman, this Court lacks jurisdiction over Defendants.

## A.    The Amended Complaint is a shotgun pleading.

In its February 23 Order, the Court held that "[t]he complaint . . . is a shotgun pleading as it fails to separate into a different count each cause of action or claim for relief against each defendant." (Doc. 38 at 11). The Court noted that the tweets "are not the same," despite that they both "commemorate Trayvon Martin's birthday and addressed societal issues surrounding his death." *Id.* In addition, the two tweets, based

---

[4] The law of the case doctrine does not apply on a subsequent motion to dismiss an amended complaint before the same court, particularly with regard to dicta. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018) ("The district court is not, however, bound by any law of the case. The district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination."); *Van Poyck v. Fla. Dept. of Corrections*, 290 F.3d 1318, 1328, n.12 (11th Cir. 2002) ("[t]he 'law of the case' doctrine does not apply to dicta."). The discussion of "actual malice" and defamation *per se* in the Court's prior order is dicta, as it is not necessary to the Court's order granting dismissal under Federal Rules of Civil Procedure 10(b) and 12(b)(2).

on the facts as alleged by Zimmerman, were "tweeted from [Defendants'] individual twitter accounts." *Id.* Therefore, the Court found that, in "assert[ing] each count against both defendants" and "lump[ing] all allegations against each defendant together," the complaint took an unacceptable approach to establishing relief and violated Federal Rule of Civil Procedure 10(b)'s "mandate[] that 'each claim founded on a separate transaction or occurrence . . . be stated in a separate count.'" *Id.* (quoting Fed. R. Civ. P. 10(b)).[5]

The Amended Complaint fails in the same exact way. Specifically, Zimmerman ignored this Court's clear directive and has again failed to separate his counts to separately address each tweet. (*See* Doc. 39 at 9-14). Illustrating this point, the Amended Complaint does not accuse Warren of implying Martin's death was the result of racism and alleges only that "Warren's tweet was defamatory because it characterized Martin's death as the result of gun violence," (Doc. 39 at ¶ 17), and it does not—nor could it—accuse Buttigieg's tweet of implying anything about "gun violence"; nevertheless, in its "lumped together" defamation *per se* count only, the Amended Complaint alleges that both tweets imply that "Zimmerman was directly responsible for 'white supremacy,' 'gun violence,' 'prejudice,' 'fear' and racism." (*Id.* at ¶ 49). Because the Amended Complaint is guilty of the same sin as the original Complaint, the Amended Complaint should be dismissed for the same reason.

---

[5] The Court further noted that it "questions whether these defendants should even be joined in the same lawsuit as there is no indication that the tweets arose out of the same transaction or occurrence" although it left that issue's resolution for another day. (Doc. 38 at 11, n.3).

**B.      Exercising personal jurisdiction would violate the Due Process Clause.**

In dismissing the original Complaint, the Court found that "Zimmerman has not pleaded sufficient facts to show that Defendants committed a tortious act within Florida such that long-arm jurisdiction exists," because "[t]here is not one allegation that either tweet was directed to a specific person in Florida or accessed by a person in this forum." (Doc. 38 at 17). Having found that Zimmerman did not plead facts sufficient to satisfy Florida's long-arm statute, the Court found it "need not address whether the exercise of jurisdiction would offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (*Id.* at 18). Even assuming for the sake of argument that Zimmerman's claims satisfy the long-arm statute, *see infra* at 21-24, exercising jurisdiction here would violate the Due Process Clause of the Fourteenth Amendment.

Rule 12(b)(2) permits a defendant to challenge a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Under the Rule, if challenged, the party asserting jurisdiction must allege a *prima facie* case for jurisdiction. *See Robinson v. Giarmarco & Bill. P.C.*, 74 F.3d 253, 255 (11th Cir. 1996). This *prima facie* case must consist of enough evidence to withstand a directed verdict when the facts as alleged are taken as true. *Id.* at 255.

A court must have both statutory and constitutional authority to assert jurisdiction over a defendant. *See generally McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221-23 (1957). In determining whether a court has personal jurisdiction over a defendant, the court must first look to the state's long-arm statute, and, if state law is satisfied, the

court must then determine if an assertion of jurisdiction would be constitutional. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).[6]

Exercising personal jurisdiction over these non-resident Defendants would violate due process. The constitutional analysis "looks to the defendant's contact with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." (Doc. 38 at 13 (quoting *Madara*, 916 F.2d at 1516). "This requirement is satisfied if the defendant has '*purposefully directed*' his activities at the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." (*Id.* (emphasis added) (quoting *Madara*, 916 F.2d at 1516)).

In determining whether the tortious act was *specifically aimed* at the forum state, a "mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 289-90 ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). Thus, the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects

---

[6] Zimmerman does not plead, nor can he, that nonresident Defendants have sufficient "continuous and systematic" contacts with the State of Florida to confer general jurisdiction over them. *See Woods v. Nova Cos. Belize, Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999); *Meyer v. Carnival Corp.*, 938 F. Supp. 2d 1251, 1258 (S.D. Fla. 2013). Defendants thus focus on the reasons why the Court lacks specific personal jurisdiction over them based on their respective tweets. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d 1339, 1352 (11th Cir. 2013).

him to the forum in a meaningful way." *Id.* at 290.

As one court recently explained, "[p]laintiffs cannot sue defendants wherever they want. To force a defendant to face trial in another State, the Constitution requires the plaintiff to show that the defendant had 'minimal contacts' with that State, contacts that would allow the defendant to 'reasonably anticipate being haled into court' in that State." *Moore v. Cecil*, No. 4:19-cv-1855-CLM, 2020 WL 5603044, at *6 (N.D. Ala. Sept. 18, 2020) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310 (1945) and *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Zimmerman alleges that Warren and Buttigieg are not residents of Florida. (*See* Doc. 39 at 2). Zimmerman does not allege—nor could he—that either tweet was sent in Florida, or that Defendants' respective tweets, which were published from outside of Florida to a national audience and address areas of deep, nationwide public concern regarding prejudice, racism, and gun violence, were targeted at the State of Florida, specifically. While the original Complaint tried (and failed) to allege that the tweets were targeted at Florida by alleging that Florida is "the third largest state and . . . is crucial to win the 2020 Democrat presidential primary and the general presidential election," the Amended Complaint no longer includes even this insufficient allegation. (*Compare* Doc. 1-1 at ¶¶ 5, 6, *with* Doc. 39 (omitting the allegation)).

In fact, the Amended Complaint alleges the opposite—that the tweets were *not* directed at Florida but instead were directed at Defendants' respective millions of followers on Twitter, a worldwide social media platform, by two rival candidates then competing for the Democratic nomination for President of the United States. (Doc. 39

11

at ¶¶ 8, 14). Zimmerman's failure to so much as *allege* that the tweets were aimed at Florida requires dismissal. *See Robinson*, 74 F.3d at 255 (explaining that, in determining whether personal jurisdiction exists, courts "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.") (citation omitted).

But even had Zimmerman attempted to allege that the tweets were directed at Florida (and he did not), the Due Process Clause would still require dismissal here. Importantly, this is true whether or not the tweets were *about* Zimmerman—which Defendants deny. *See e.g., Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015) (dismissing for lack of personal jurisdiction where defendant's "posts were meant for a national or even international audience," and "the only connection" between his tweets and the forum state was "Plaintiff's [alleged] injury."); *Moore*, 2020 WL 5603044, at *15-21 (similar); *Blankenship v. Napolitano*, 451 F. Supp. 3d 596 (S.D. W. Va. 2020) (similar); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ("[W]here a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions," such a posting alone provides no basis for exercising personal jurisdiction); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890-91 (6th Cir. 2002) (same); *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014) (same) (collecting authority). Because the Amended Complaint does not so much as allege that the tweets were directed at Florida, asserting personal jurisdiction over Defendants here would offend the constitutional strictures of due process. Accordingly, Zimmerman's claims against Defendants

should be dismissed for want of jurisdiction under the Due Process Clause of the Fourteenth Amendment.

## C.    Counts I & II should be dismissed for failure to plead actual malice.

The Court found that Zimmerman pled actual malice in his original Complaint, (Doc. 38 at 24). But Zimmerman then chose to entirely rewrite his Complaint, and the Court should now find Zimmerman failed to plead actual malice in the Amended Complaint. In finding that Zimmerman had sufficiently pled actual malice to overcome a motion to dismiss, the Court noted that in his original Complaint, Zimmerman had

> allege[d] that Buttigieg and Warren's tweets implied that Zimmerman had killed Trayvon Martin because Zimmerman is a racist or a white supremacist, or due to other like reasons, even though both were aware that he was acquitted of [second-degree murder and manslaughter] charges based on evidence that he acted out of self-defense.

(Doc. 38 at 24). Here, the pleadings are substantially different *and*, even if they were not, Zimmerman has failed to plead actual malice.

### 1.    The pleadings and factual allegations in support of the Amended Complaint are meaningfully different from those made in support of the original.

*First*, Zimmerman elected to redraft the Amended Complaint from top to bottom and, therefore, the basis for the Court's February 23rd ruling as to actual malice has changed. (*Compare* Doc. 1-1, *with* Doc. 39).

Zimmerman is a public figure who must "allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Michel v. NYP Holdings,*

13

*Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing"— instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The Court thus must assess the Amended Complaint to determine if Zimmerman has plausibly alleged a factual basis that would allow the jury to determine Defendants knew their statements were false or acted recklessly. He has not done so.

In his original Complaint, Zimmerman included pages alleging (albeit baselessly) that Defendants had intimate knowledge of his criminal trial and the testimony and evidence adduced therein, a civil lawsuit Zimmerman filed against Trayvon Martin's mother and others seeking $100 million dollars in damages, and certain self-serving statements and documentaries about him. (*See generally* Doc. 1-1 at ¶¶ 10-43). In the Amended Complaint, Zimmerman scraps all this. Now, he alleges only that "[b]oth Buttigieg and Warren . . . knew of his acquittal," that "Buttigieg knew that the 2013 trial jury acquitted Zimmerman of all charges," and that "Warren was aware that Zimmerman's act was one of self-defense and that he was acquitted of all charges based on the evidence." (Doc. 39 at ¶¶ 10, 17-18).

Simply put, Zimmerman no longer alleges (and for good reason) that Defendants had *his* depth of knowledge of everything that occurred in his criminal trial, what he pled in his civil lawsuit against Trayvon Martin's family, or in certain

14

self-serving statements about him. Notably, this means he no longer alleges that "both [Defendants] were aware that he was acquitted of [second-degree murder and manslaughter] charges *based on evidence that he acted out of self-defense.*" (Doc. 38 at 24 (emphasis added)). Rather, he now alleges only that Defendants knew the *outcome* of the trial and not the *substance* of that trial, the evidence presented in it, or anything else. Indeed, Zimmerman does not even plead that Buttigieg knew that Zimmerman's acquittal had anything to do with his affirmative defense of justifiable use of deadly force, or that Warren's tweet implied anything about racism or white supremacy. This means that Zimmerman has failed to plead even the slightest factual basis to conclude that either Defendant knew their statements were false. For this reason, the Court should dismiss Counts I and II of the Amended Complaint for failure to plead actual malice: Zimmerman now fails to plead actual malice even on the bases cited in the Court's February 23 Order.

> **2. Zimmerman's acquittal is immaterial to the question of actual malice.**

*Second*, the fact that Zimmerman was acquitted of second-degree murder and manslaughter charges by a jury is immaterial to whether Defendants acted with actual malice, even assuming they implied what Zimmerman alleges: (1) that Buttigieg's tweet "implied that Trayvon Martin's death was a result of '*white supremacy, gun violence, prejudice, and fear*,'" (Doc. 39 at ¶ 10); and that Warren's tweet implied that Martin's death was the result of gun violence. (*Id.* at ¶ 17).

As set out above, to assert actual malice, the Amended Complaint must plausibly allege that a given Defendant subjectively doubted the veracity of his or her

15

tweet. The Amended Complaint must, at minimum, set out facts that "indicate an awareness" of the "probable falsity" of the statement. *St. Amant*, 390 U.S. at 732-33.

The Amended Complaint alleges only that Defendants "knew of [Zimmerman's] acquittal," and that Warren knew "Zimmerman's act was one of self-defense." (Doc. 39 at ¶¶ 17, 18). In finding that Zimmerman had sufficiently pleaded actual malice because he pleaded that Defendants knew he was acquitted of homicide charges based on a finding of self-defense, the February 23 Order suggests that, if Zimmerman can later prove that Defendants knew he was acquitted of homicide charges based on his affirmative defense of justifiable use of deadly force, that he will have proven actual malice here. That cannot be the law, as it implies that the jury's finding of self-defense is mutually exclusive of the opinion that someone's actions were motivated in whole or part by racism or white supremacist prejudice. Said differently, if the Amended Complaint adequately pleads actual malice, it is because the mere fact of acquittal and/or (with regard to Warren) the successful presentation of the affirmative defense of justifiable use of deadly force or self-defense *necessarily* means that the death in question does not implicate racism, white supremacy, gun violence, prejudice, or fear. This is obviously not the case: Both things can be true at once.

To establish the affirmative defense of justifiable use of deadly force or self-defense, Zimmerman was required to show nothing more than that he believed his actions were necessary to prevent harm to himself. *See e.g.* Florida Standard Jury Instruction (Crim.) 3.6(f), *Justifiable [use] [or] [threatened use] of deadly force* ("(Defendant) was justified in [using] . . . deadly force if [he] reasonably believed that such [force]

16

was necessary to prevent [imminent death or great bodily harm] to [himself]. . . If (defendant) was not otherwise engaged in criminal activity and was in a place [he] [she] had a right to be, then [he] had no duty to retreat and had the right to stand [his] ground."). Zimmerman was not required to *disprove*, for example, that his actions that day were motivated as well by racism, white supremacy, prejudice, or fear.

In other words, the only awareness Defendants could have definitively gained from an awareness of Zimmerman's acquittal is that a jury of six individuals, when presented with evidence of the facts and circumstances, could not conclude, *beyond a reasonable doubt*, that Zimmerman unjustifiably and intentionally caused the death of Trayvon Martin. Fla. Stat. § 782.07(1) (defining manslaughter as "[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification"); Fla. Stat. § 782.04(2) (defining second degree murder as "unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life").

Stated plainly, Zimmerman may have been acquitted because a jury concluded he established the legal elements of self-defense, even if his initial suspicion of Martin was influenced by racism, white supremacy, prejudice, and fear. In any event, Zimmerman pleads no facts that would suggest that either Defendant acted *recklessly* or with *knowledge* their statements were false as opposed to—at most—simply expressing the opinion that the jury got it wrong, or that Martin's death manifested troubling social issues even if Zimmerman's actions were legally justified under

Florida law.[7]

In sum, the Amended Complaint's sole allegation that Defendants knew of his acquittal, and that Warren knew his acquittal was based on an affirmative defense of justifiable use of deadly force, is insufficient to plead actual malice.

### 3. Accusations of racism or white supremacy are not actionable, in general, and are insufficient to allege actual malice here.

Separately, allegations that Zimmerman acted with racial animus on the day that Trayvon Martin was killed, and reports he has made racially discriminatory statements since, have been widely reported. It would gut First Amendment protections if a person could not speak about a public figure who denied unflattering news coverage, and courts have time and again rejected that absurd position, often by granting motions to dismiss. *See, e.g.*, *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 82, 85 (D.D.C. 2019) (dismissing claim over statements that U.S. Senate candidate "conduct[ed] racial profiling on a mass scale," "terroriz[ed] immigrant neighborhoods," and oversaw "humiliating" and "lethal" jails where one inmate was "left battered on the floor to die" because "publicly reported news events . . . underpinning [such] claims" made "ample reason to reject" assertion of actual malice); *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1161 (S.D. Fla. 2018) (rejecting claim over statement that plaintiff dealt arms because accusations were "already the subject of

---

[7] Relatedly, it is also not defamatory to opine that a jury got it wrong. *See e.g.*, *Noth v. Evening News Ass'n*, 61 N.W.2d 1, 2 (Mich. 1953) (it was *not* defamatory to opine that a plaintiff who was acquitted of murder but convicted of manslaughter by a jury *should have been convicted of murder*, where defendant published: "Nothing but a capital punishment law could have handled the Noth case properly. Noth was a cold-blooded murderer, deliberately so. He should die! Michigan should have a law under which such wretches would pay the proper price for their crimes!").

'widespread media reports'"). Having "reasonably relied" on "a multitude of previous reports," Defendants could not have entertained serious doubts about the veracity of their alleged implications. *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 862 (5th Cir. 1978); *see also Liberty Lobby, Inc. v. Dow Jones Co., Inc.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) ("[G]ood faith reliance on previously published reports . . . precludes a finding of actual malice as a matter of law.").

Indeed, courts have repeatedly held that an allegation of racism or white supremacy is a matter of opinion and therefore not even actionable, because the assertion that someone is a racist is not provable as either true or false. *See e.g., Squitieri v. Piedmont Airlines, Inc.*, No. 17-cv-441, 2018 WL 934829, at *4 (W.D. N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false") (collecting cases); *see also Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988); *Garrard v. Charleston Cnty. Sch. Dist.*, 838 S.E.2d 698, 713–14 (S.C. Ct. App. 2019), *reh'g denied* (Mar. 18, 2020) ("We do not find that the term 'racist douchebag' can 'reasonably [be] interpreted as stating actual facts,'" and "the use of the term 'racist' in an opinion editorial to describe a sequence of events related to a racially sensitive matter does not assert any verifiable, objectively provable fact"); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 807 (W.D. Pa. 1972).

**D.    Count III of the Amended Complaint should be dismissed for failure to state a claim for defamation *per se*.**

The Court's February 23rd Order noted that "a statement that attributes racist and white supremacist attributes to someone" *might* "subject [a plaintiff] to hatred,

distrust, ridicule, contempt or disgrace," and therefore such an implication *might* amount to defamation *per se*. (Doc. 38 at 25 (citing *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955))). The parties did not litigate this argument previously because Zimmerman's sole allegation in his original Complaint was that Defendants' tweets implied that Zimmerman "*murdered* Trayvon Martin as a result of white supremacy, gun violence, prejudice, fear and racism." (Doc. 1-1 at ¶ 67). In other words, Zimmerman's only allegation was that the alleged *implications* of the tweets were defamatory *per se* because "they falsely accuse Plaintiff Zimmerman of committing a serious crime, which he was exonerated for, and which amounts to a crime of moral turpitude." (*Id.* at ¶ 68). Zimmerman still pleads only this. (*See* Doc. 39 at ¶¶ 49-50).

Notably, the *implication* that someone has racist or a white supremacist attributes is not defamatory at all, let alone defamatory *per se*. *See supra* at 19 (explicit accusations of racism and white supremacy are not defamatory). Moreover, Zimmerman no longer pleads that Warren's tweet implied he is a racist or white supremacist. (*See* Doc. 39 at ¶ 17). Relatedly, Zimmerman's acquittal is irrelevant to whether "Martin's death was a result of 'white supremacy, gun violence, prejudice, and fear'" or "gun violence," *supra* at 15-18; Zimmerman's claim that the tweets imply he is guilty of the specific crime of murder still requires far too many inferential steps to get to the conclusion to be actionable, (*see* Doc. 38 at 25; Doc. 17 at 23-24); and even *if* the tweets explicitly stated an opinion that the jury got it wrong (and they do not), such a statement would *not* give rise to a claim for defamation, *supra* at n. 7.

20

But, in any event, under Florida law, a claim of defamation *per se cannot* rely on implication or innuendo by definition.

> [A] publication is libelous *per se*, or actionable *per se*, if, **_when considered alone without innuendo_**: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession.

*Richard v. Gray*, 62 So.2d 597, 598 (Fla. 1953) (emphasis added); *see also Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. Dist. Ct. App. 2016). In other words, defamation by implication and defamation *per se* are mutually exclusive causes of action, so Count III must be dismissed.

**E.   If the Court does not dismiss the Amended Complaint, the Court should order limited discovery and make a ruling on personal jurisdiction**.

Finally, if the Court does not dismiss the Amended Complaint on one or more of the bases above, it should order limited discovery regarding personal jurisdiction and rule on that issue first.

Florida's long-arm statute is only satisfied if the alleged defamatory statements are *about* a Florida resident. Here, the Court has not ruled that the tweets are about Zimmerman and has instead indicated only that it will accept as true, for purposes of a motion to dismiss, Zimmerman's allegation that "[t]he name 'George Zimmerman' is 100% synonymous with Trayvon Martin and the incident that resulted in the death of Trayvon Martin." (Doc. 38 at 22). Whether the tweets were *about* Zimmerman is dispositive as to whether the Court has jurisdiction over Defendants under Florida law, so this factual question should, if necessary, be resolved first.

Florida's long-arm statute, Section 48.193(1)(a)(2), Florida Statutes, "provides that a nonresident defendant is subject to personal jurisdiction in Florida '*for any cause of action arising from . . . [c]omitting a tortious act within [Florida].*'" (Doc. 38 at 14 (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d 1339, 1353 (11th Cir. 2013)). "Jurisdiction under the long-arm statute may be triggered where there are allegations about an out-of-state defendant's electronic or written communications into Florida and the cause of action arises from those communications." (*Id.* at 14-15).

The Florida Supreme Court has held "allegedly defamatory material *about a Florida resident* placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is access (or 'published') in Florida." (Doc. 38 at 15-16 (emphasis added) (quoting *Internet Sols. Corp. v. Marshall*, 39 So.3d 1201, 1206 (Fla. 2010)). Florida's long-arm statute imposes two requirements for jurisdiction: (1) that the allegedly defamatory statement is *about* a Florida resident; and (2) that the statement was accessed or published in the forum state.[8]

In other cases that have addressed the bounds of Florida's long-arm statute, whether the alleged defamatory statements were about plaintiff at all has not been in dispute. In *Internet Solutions Corporation*, for example, there was no dispute between the parties that the alleged defamatory statement was about "a company with its principal place of business in Florida." 39 So.3d at 1203. There, the defendant identified plaintiffs by name on her blog and, elsewhere on its website, even listed the Florida

---

[8] In his Amended Complaint, Zimmerman now alleges that that some Florida residents accessed the tweets. (*See* Doc. 39 at ¶¶ 7, 16).

address of the plaintiff organization. *Id.* at 1203-04. Similarly, the alleged defamatory statements in *Catylyst Pharm., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018) had been posted to an online message board "dedicated to discussions regarding" the plaintiff. (Doc. 38 at 16). Here, even Zimmerman alleges that the tweets were published to a general, worldwide audience and, as the Court noted, the tweets addressed broad societal issues. And, as Defendants have argued (Doc. 17 at 2, 6, 13-17), neither tweet was *about* Zimmerman.

In its February 23 Order, the Court concluded that, taking the allegation as true that "[t]he name 'George Zimmerman' is 100% synonymous with Trayvon Martin and the incident that resulted in the death of Trayvon Martin" under the standard of review, that "Zimmerman plausibly alleged that the tweets, when considered as a whole, included an implied or indirect reference to him due to the incident resulting in Trayvon Martin's death." (Doc. 38 at 22). But the Court has not yet ruled on the *merits* of that contention in determining whether the alleged defamatory tweets are "*about* a Florida resident," as required by the long-arm statute. *See Internet Sols. Corp.*, 39 So.3d at 1206 (emphasis added).

That a pleading overcomes a motion to dismiss for want of jurisdiction does not mean that jurisdiction exists, and "[f]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vorbe v. Morisseau*, No. 1:14-CV-20751, 2014 WL 12637924, at *4 (S.D. Fla. Aug. 27, 2014) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978)). "Where issues arise as to jurisdiction or venue, discovery is available to ascertain facts

bearing on such issues." *Oppenheimer Fund, Inc.,* 437 U.S. at 340, n. 13. "If the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation, . . . [then] discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue." *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 729-30, n.7 (11th Cir. 1982) (internal quotation omitted).

To be clear, the Amended Complaint should be dismissed without further ado and in its entirety as a shotgun pleading, because exercising jurisdiction here would violate the Due Process Clause, and because Zimmerman has failed to state a plausible claim for relief. However, if the Court does not dismiss the Amended Complaint on these grounds, the Court should issue an order limiting discovery at this phase in the litigation to the limited factual question of whether "George Zimmerman's name is 100% synonymous with Trayvon Martin and the incident that resulted in [his] death," (Doc. 39 at ¶ 5), and therefore whether the alleged defamatory *implications* of the tweets are *about* a Florida resident before any further proceedings on the merits. The resolution of this factual dispute is dispositive on whether the Court has jurisdiction over Defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint. However, if the Court does not, it should order limited discovery and an evidentiary hearing on the factual dispute as to whether the tweets are about Zimmerman, as the resolution of that question is dispositive on the question of whether Florida's long-arm statute is satisfied under Rule 12(b)(2).

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel hereby certifies that counsel for Defendants conferred with counsel for Plaintiff by telephone on March 22, 2021 in accordance with M.D. Local Rule 3.01(g) and counsel for Plaintiff opposes the relief requested in this motion.

Filed: March 23, 2021

Respectfully submitted,

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No.: 0184111
**KING, BLACKWELL, ZEHNDER
  & WERMUTH, P.A.**
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com

Marc E. Elias*
**Perkins Coie LLP**
700 13th St. N.W., Suite 800
Washington, D.C. 20005-3960
Tel.: (202) 654-6200
Fax: (202) 654-9106
MElias@perkinscoie.com

William B. Stafford*
**Perkins Coie LLP**
1201 Third Ave., Suite 4900
Seattle, WA 98101-3099
Tel.: (206) 359-8000
Fax: (206) 359-9000
WStafford@perkinscoie.com

*\* Admitted pro hac vice*

*Attorneys for Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2021, I filed a copy of the foregoing Defendants' Motion to Dismiss Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Frederick S. Wermuth
Frederick S. Wermuth
Florida Bar No.: 0184111

*Attorney for Defendants*