FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

2021 APR 21  AM 9: 03

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**GEORGE ZIMMERMAN,**
**Plaintiff,**

     **v.**                  **Case No: 8:20-cv-1077-CEH-CPT**

**PETE BUTTIGIEG and ELIZABETH**
**WARREN,**

     **Defendants.**

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS AMENDED COMPLAINT**

Plaintiff George Zimmerman ("Plaintiff") hereby submits his opposition to

Defendants Pete Buttigieg ("Buttigieg") and Elizabeth Warren's ("Warren")

Motion to Dismiss.

**I.**    **INTRODUCTION**

On February 23, 2021 the Defendants' Motion To Dismiss was granted without

prejudice.  The Plaintiff was granted the opportunity by the Court to file an Amended

Complaint on or before March 9, 2021.  The Plaintiff ("Zimmerman") filed an

Amended Complaint which cures the defects discussed in the Order.

1

The Court stated in its ORDER:

> "In sum, the complaint contains deficiencies that subject it to dismissal as a **shotgun pleading**. Personal jurisdiction over Defendants has not been established, as Zimmerman has not sufficiently alleged that either Buttigieg or Warren committed a tortious act in this state. Additionally, Zimmerman has failed to state a cause of action by failing to sufficiently allege **publication**, an essential element of defamation."

Zimmerman filed an Amended Complaint on March 9, 2021. The Court ruled in favor of Zimmerman on many points and the Amended Complaint cures the remaining issues.

## II.   <u>Shotgun Pleading</u>

Zimmerman's Amended Complaint is not a shotgun pleading as it separates into a different count each cause of action or claim for relief against each defendant. The Amended Complaint is in the form of grouping of facts in main section generally around one defendant at a time, then joint fact assertions. The counts deal with joint and several liability. The Defendants by their own briefing clearly can dissect and identify which facts, claims etc. relate to which defendant.

The cases cited by the Court make it clear that the goal is to ensure concise pleadings placing the Defendants on notice of the facts and claims pertinent to each Defendant. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." <u>Weiland v. Palm Beach Sheriff's Office</u>, 792 F.3d at 1323; *see also*

2

Lampkin  Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"). Zimmerman's Amended Complaint articulates claims with sufficient clarity to allow the defendant to frame a responsive pleading.

### III.  Amended Complaint Establishes Personal Jurisdiction and Publication in Florida

Zimmerman alleges in the Amended Complaint that the tweets were accessed by a third party in Florida.   "Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida 'for any cause of action arising from ... [c]omitting a tortious act within [Florida].' " Louis Vuitton, 736 F.3d at 1353 (quoting Fla. Stat. § 48.193(1)(a)(2)). "[T]he alleged tortfeasor's 'physical presence [in Florida] is not required.' " Horizon, 421 F.3d at 1168 (quoting Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla.2002)).   In this case jurisdiction under the long–arm statute may be triggered where there are allegations about an out-of-state defendant's electronic or written communications into Florida and the cause of action arises from those communications. Id. (citing Wendt, 822 So.2d at 1260 and Acquadro v. Bergeron, 851 So.2d 665, 671 (Fla.2003)).

Paragraph 6 -7 of the Amended Complaint state:

6.    *"The actions giving rise to this lawsuit occurred on February 5, 2020*

3

*when defendant Pete Buttigieg made the following tweet:*

 **Pete Buttigieg** ✔ @PeteButtigieg · Feb 5

Trayvon Martin would have been 25 today.

How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?

#BlackLivesMatter ✊🏽

💬 13.3K          ⟲ 5.6K          ♡ 42.1K          ⬆

7.      *The tweet was read by the following Florida residents:*

a.      *Christine Costello*
        *2008 Greenwood Valley Drive*
        *Plant City, Florida 33563*

b.      *Richard Baris*
        *2939 NW 43RD Avenue*
        *Gainesville, Florida 32605*

c.      *Mandy Ellzey*
        *5940 Kendrew Drive*
        *Port Orange, Florida 32127*

d.      *Robert Mas*
        *8762 NW 158TH Street*
        *Hialeah, Florida 33018*

e.      *Richard O'Brien*

4

2830 Se Tate Avenue
Port Saint Lucie, Florida 34984

f.   Leon Zhivelev (@Leonfunking)
     447 NE 195ᵀᴴ Street
     Apt. 309
     Miami, Florida 33179

g.   Steven Lemongello
     Orlando Sentinel
     February 5, 2020
     "Pete Buttigieig honors Trayvon Martin's 25ᵗʰ birthday tweets,
     'BlackLivesMatter'"

Paragraph 14-16 of the Amended Complaint state:

14. *Defendant Warren tweeted the following statement to her 3,600,000*

*followers on Twitter:*

5

 **Elizabeth Warren** ✔
@ewarren

My heart goes out to @SybrinaFulton and Trayvon's family and friends. He should still be with us today.

We need to end gun violence and racism. And we need to build a world where all of our children—especially young Black boys—can grow up safe and free.

> **Frederick Joseph** ✔ @FredTJoseph · Feb 5
> Today would have been Trayvon Martin's 25th birthday.
>
> His memory should always have a place in our hearts, and his tragedy should always have a place in our work. #HappyBirthdayTrayvon



8:13 PM · Feb 5, 2020 · Twitter Web App

**1K** Retweets    **7.4K** Likes

15.   *In only three days, the tweet received 7,300 likes and 1,000 retweets, as well as national media coverage, including the state of Florida.*

16.   *The tweet was read by the following Florida residents:*

a.   *Greg Angel*
*11 W Harding St*
*Orlando, Florida 32806*

b.   *Darren Freeman*

6

     *1006 S Lake Mariam Dr*
     *Winter Haven, Florida 33884*

  c.  *Paul Hurteau, Jr*
     *66 Hatteras Ave*
     *Winter Haven, Florida 33880*

  d.  *Amber Q Perry*
     *8516 Fortress Dr*
     *Tampa, Florida 33621*

  e.  *Farah Tavakoli*
     *953 Northridge Dr*
     *Palm Harbor, Florida 34683*

  f.  *Gail Young*
     *1010 Dotterel Rd Apt 217*
     *Delray Beach, Florida 3344*

Zimmerman's Amended Complaint establishes personal jurisdiction over Buttigieg and Warren. Personal jurisdiction exists over a nonresident defendant under Florida's long-arm statute and does not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. <u>Louis VuittonMalletier, S.A. v. Mosseri</u>, 736 F.3d 1339, 1350 (11th Cir. 2013). Both prongs of the analysis are satisfied may and the Court may exercise personal jurisdiction over a nonresident defendant. <u>Madara v. Hall</u>, 916 F.2d 1510, 1514 (11th Cir. 1990).

7

As to the reach of Florida's long-arm statute, it is well established that federal courts are required to construe it as would the Florida Supreme Court as it involves a question of Florida law. Id. The Eleventh Circuit has explained that:

> A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, id. § 48.193(2).

Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203–04 (11th Cir. 2015). "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." Louis Vuitton, 736 F.3d at 1352. General jurisdiction, on the other hand, exists when a defendant "is engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity." Id. (quoting Fla. Stat. § 48.193(2)).

Long-arm jurisdiction exists and the exercise of jurisdiction does not offend "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.' " Horizon Aggressive

8

Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005) (quoting
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945));
Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004)(same).
"The Due Process Clause of the United States Constitution protects an individual's
liberty interest in not being subject to the binding judgments of a forum with which
he has established no meaningful contacts, ties, or relations." Thomas v. Brown, 504
F. App'x 845, 848 (11th Cir. 2013) (quotation omitted).

Where a forum seeks to assert specific personal jurisdiction over a nonresident
defendant, due process requires the defendant have "fair warning" that a particular
activity may subject him to the jurisdiction of a foreign sovereign. Madara, 916 F.2d
at 1516. This requirement is satisfied because the defendants have "purposefully
directed" his activities at the forum and the litigation results from alleged injuries that
"arise out of or relate to" those activities. Id. (citing cases). Once this has been
established, the court considers various factors in determining whether the exercise
of jurisdiction would comport with "fair play and substantial justice." Id. at 1517
(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). These factors
include:

> the burden on the defendant in defending the lawsuit, the forum state's
> interest in adjudicating the dispute, the plaintiff's interest in obtaining
> convenient and effective relief, the interstate judicial system's interest
> in obtaining the most efficient resolution of controversies and the shared
> interest of the states in furthering fundamental substantive social
> policies.

Id. (citing Burger King, 471 U.S. at 477).

9

Zimmerman contends that the long-arm statute has been satisfied as the tweets were widely covered in the national media, including in Florida, and accessed in Florida. [Amended Complaint ¶ 7, ¶16]. In his Amended complaint Zimmerman has alleged that the tweets were accessed by multiple third parties in Florida. [Amended Complaint, ¶ 7, ¶16]. "Section 48.193(1)(a)(2) provides that a nonresident defendant is subject to personal jurisdiction in Florida 'for any cause of action arising from ... [c]omitting a tortious act within [Florida].' " Louis Vuitton, 736 F.3d at 1353 (quoting Fla. Stat. § 48.193(1)(a)(2)). "[T]he alleged tortfeasor's 'physical presence [in Florida] is not required.' " Horizon, 421 F.3d at 1168 (quoting Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla.2002)). Jurisdiction under the long–arm statute may be triggered where there are allegations about an out-of-state defendant's electronic or written communications into Florida and the cause of action arises from those communications. Id. (citing Wendt, 822 So.2d at 1260 and Acquadro v. Bergeron, 851 So.2d 665, 671 (Fla.2003)).

The parties have both discussed the Florida Supreme Court's ruling on a very similar case, Internet Sols. Corp. v. Marshall, 39 So. 3d 1201 (Fla. 2010). In that case, defendant, operator of a noncommercial website—on which she posts information about consumer-related issues—made a post about one of the websites operated by plaintiff employment recruiting and internet advertising company. Id. at 1203. The post included a listing of affiliates of plaintiff and listed Florida addresses. Id. Additionally, exhibits attached to the complaint indicated that several of the

comments posted by third parties appeared to be from Florida. Id. Plaintiff brought
suit against Defendant in federal court in Florida, and Defendant—a resident of the
State of Washington—moved to dismiss for lack of personal jurisdiction. Id. at 1204.
The court granted the motion, concluding that "there is no evidence that Marshall
specifically targeted Florida residents." Id. at 1205. The dismissal was appealed, and
the Eleventh Circuit certified the following question to the Florida Supreme Court:

> whether a nonresident commits a tortious act within Florida for purposes
> of the long-arm statute when he or she makes allegedly defamatory
> statements about a company with its principal place of business in
> Florida by posting those statements on a website, where the website
> posts containing the statements are **accessible and accessed** in Florida

Id. at 1206.

The court answered in the affirmative, concluding that "allegedly defamatory
material about a Florida resident placed on the Web and accessible in Florida
constitutes an 'electronic communication into Florida' when the material is accessed
(or 'published') in Florida." Id. In doing so, the Court pointed out that the question
of whether a posting on a website constituted an electronic communication into
Florida was a more difficult one than presented by telephone calls, e-mails, chat
rooms, and facsimiles—which are all directed by the alleged tortfeasor into a specific
forum. Id. at 1210. The Court reasoned further:

> In the context of the World Wide Web, given its pervasiveness, an
> alleged tortfeasor who posts allegedly defamatory material on a website
> has intentionally made the material almost instantly available
> everywhere the material is accessible. By posting allegedly defamatory

11

> material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida. When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.

Id. at 1214–15. Thus, the court explained, it was necessary to review the complaint to determine whether it stated a cause of action for libel, including publication of the statement in Florida. Id. at 1214.

The Eleventh Circuit has since followed this reasoning, though in an unreported decision, in finding that personal jurisdiction did not exist based on the plaintiff's allegations as to defamation. In that case, Catalyst Pharm., Inc. v. Fullerton, 748 F. App'x 944 (11th Cir. 2018), the "amended complaint alleged that Fullerton 'published ... defamatory Statements in Florida to Catalyst and third parties in Florida via [the Message Board] dedicated to discussions regarding Catalyst,' " and that "these Statements were accessed by Catalyst and others in Florida.' " Id. at 947. The Eleventh Circuit affirmed the district court's dismissal for lack of personal jurisdiction, reasoning that the complaint failed to make a showing on an essential element of its case, that is, that the statements were accessed in Florida. Id. at 947. According to the appellate court, "[w]hile the[] allegations may establish that Fullerton's statements were accessible in Florida, they do not point to any facts showing the statements were accessed in Florida." Id.

Applying the rationale of the Florida Supreme Court in Internet Sols., Zimmerman's Amended Complaint has pleaded sufficient facts to show that

Defendants committed a tortious act within Florida such that long-arm jurisdiction exists.

## IV.   Defendants' Tweets were Defamatory

"Mixed expression of opinion, however, is not constitutionally protected and exists when a published statement containing an opinion is made and is not based on facts set forth in the article, or assumed facts and, therefore, implies the existence of some other undisclosed facts on which the opinion is based. Demby v. English, 667 So. 2d 350, 355 (Fla. Dist. Ct. App. 1995). "In determining whether the statement is one of pure or mixed opinion, the [*984] court must examine the words used, together with the totality of the circumstances and the context, within which it was published." Sullivan v. Barrett, 510 So. 2d 982, 983-84 (Fla. Dist. Ct. App. 1987).

Here, despite Defendants' best efforts to try to couch their tweets as "pure opinion," in the context of the entire tweets, it is clear that they were instead asserting false facts about Plaintiff. While the statements, *"How many 25th birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?"* And *"We need to end gun violence and racism"* on their own may qualify as pure opinion, the fact they are juxtaposed next to a tweet about Trayvon Martin's birthday converts them to statements of fact concerning Plaintiff. This is because any objective reader of the tweet would understand it as such. This is a matter of common sense. The only rational understanding of Defendants' tweets is that Defendants are directly referring

13

to Plaintiff as engaging in *"white supremacy, gun violence, prejudice..."* as well as *"racism."*

Defendants next contend that the referring to Plaintiff as engaging in "white supremacy, gun violence, prejudice..." as well as "racism" is not defamatory. However, they fail to come up with a single controlling Florida or Eleventh Circuit case that this is the case. This is particularly true with regard to Buttigieg's reference to Plaintiff as a white supremacist. Whether an individual is a white supremacist is an objectively verifiable statement of fact. Does the individual belong to any groups that champion white supremacy? Has the individual ever publicly championed white supremacy? If so, then that individual is a white supremacist. In Plaintiff's case, he has done nothing close to that, since he is not a white supremacist. Plaintiff is half-Peruvian, so being a "white supremacist" is not really even an option for him. Indeed, "white supremacy" is even formally defined by Merriam-Webster as *"a person who believes that the white race is inherently superior to other races and that white people should have control over people of other races."*6 Thus, this is a statement of concrete fact, not unverifiable opinion.

Furthermore, whether Plaintiff engaged in "gun violence" is also an objectively verifiable fact. Here, Plaintiff Zimmerman was acquitted of all charges stemming from the Trayvon Martin shooting, so objectively, and under the eyes of the law, he did not engage in "gun violence," but instead justifiable self defense.

Thus, despite Defendants' best attempts to twist and couch their tweets to try to escape liability for their actions, their tweets were clearly defamatory under Florida law.

14

## V.      Plaintiff Sufficiently Pled Actual Malice

Plaintiff has more than met the threshold for pleading actual malice. The Complaint unquestionably alleges facts sufficient to "give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016).  First and foremost, the Complaint sets forth that Plaintiff was acquitted of all charges regarding the Trayvon Martin shooting. Comp. ¶ 17. Defendants clearly knew this as well. Thus, from this alone, they must have known that Plaintiff did not engage in "gun violence," since he was acquitted of all charges. The same is true for their allegations of "white supremacy" and "racism." If Plaintiff had acted out of "white supremacy" and "racism" in shooting Trayvon Martin, as opposed to self-defense, he surely would have been convicted. Defendants therefore, at a minimum, recklessly disregarded the truth.

## VI.     Lack of specific reference to Zimmerman is still Defamation

Defendants argue that their tweets are not about Zimmerman, do not mention his name at all, nor imply anything about him. [Doc. 17 at p. 13]. This argument relates to the second element of the tort, falsity, as the false statement must be of or concerning the plaintiff. See Lopez v. Ingram Micro, Inc., No. 95-2004-CIV-NESBITT, 1997 WL 401585, at *4 (S.D. Fla. Mar. 18, 1997) (noting that defamation in Florida requires that the defendant publish a false statement of fact

15

of or concerning the plaintiff); <u>Baker v. McDonald's Corp.</u>, 686 F. Supp. 1474, 1484 (S.D. Fla. 1987) (stating that in Florida "the plaintiff must show that the defendant made a false statement of fact of or concerning the plaintiff"), aff'd, 865 F.2d 1272 (11th Cir. 1988). Certainly, this element applies to all forms of the tort.

The Court agreed that Zimmerman's name is nowhere mentioned in either tweet. [Doc. 1-1 pp. 27, 29]. However, it does not appear that there is a strict requirement, in Florida, that the author of the defamatory publication specifically identify a person by name for the statement to be actionable. The case law merely indicates that the statement must concern a public official or a private person. *See* <u>Jews For Jesus</u>, 997 So. 2d at 1106. In fact, defamation by implication is premised not on direct statements. Id. at 1107-08. Certainly, a tortfeasor could juxtapose a series of facts in such a way that a specific person is identifiable even though that person's name has not been used.

The Court ruled that the claim for defamation by implication in Count II is therefore not subject to dismissal on this basis. Moreover, the Court said it would not impose such a requirement, in the absence of Florida authority on the issue, as to either the claim for general defamation in Count I or defamation by implication in Count II. Even then, the complaint alleges generally that "[t]he name 'George Zimmerman' is 100% synonymous with Trayvon Martin and the incident that resulted in the death of Trayvon Martin." [Doc. 1-1 ¶¶ 21, 23]. Taking this allegation as true, Zimmerman plausibly alleges that the tweets, when considered as a whole, included an implied or indirect reference to him due to the incident resulting in Trayvon

Martin's death. **As such, the Court has <u>disagreed</u> that the failure to name Zimmerman in the tweets subjects the claims to dismissal.**

## VII.   <u>Count III of the Amended Complaint states a claim for defamation *per se*</u>

The Defendants claim that Zimmerman failed to state a claim for defamation *per se.* Paragraphs 47-62 state:

***"THIRD CAUSE OF ACTION***
***Defamation Per Se***
*Defendants Buttigieg and Warren*

47.   Plaintiff Zimmerman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

48.   Defendants, together and both of them acting in concert, jointly and severally, and individually, have defamed Plaintiff Zimmerman by knowingly, intentionally, willfully, and recklessly publishing statements about him which they knew or should have known to be false and misleading.

49.   **Defendants made and published false and defamatory statements concerning Plaintiff Zimmerman by calling, representing and publishing within this district, the nation and the world, with actual malice, that Plaintiff Zimmerman was directly responsible for "white supremacy," "gun violence," "prejudice," "fear" and "racism," among other defamatory innuendos and statements as explained above; and thus murdered Trayvon Martin as a result.**

50.   **These statements are defamatory per se because they falsely accuse Plaintiff Zimmerman of committing a serious crime, which he was exonerated for, and which amounts to a crime of moral turpitude. As defamation per se, actual malice and damage to Plaintiff Zimmerman is presumed as a matter of law.**

51.   Defendants acted in concert and are therefore jointly and severally liable as joint tortfeasors, and individually.

52.   Defendants acted with actual malice insofar as they knew that the statements made against Plaintiff Zimmerman were false and/or recklessly disregarded their truth. Defendants had reason to know that their tweets were false and misleading.

53.   Defendants statements and the tweets were made without any privilege.

54.   Defendants false words concerning Plaintiff Zimmerman are so harmful that

17

*proof of their injurious effect is unnecessary.*

55.  *As a direct and proximate result of Defendants' extreme, outrageous and malicious, defamatory conduct set forth above, Plaintiff Zimmerman has been the subject of widespread ridicule and humiliation and has suffered severe loss of reputation, which has in turn also caused him pain and financial damage.*

56.  *These false impressions of Plaintiff Zimmerman, which Defendants created, caused irreparable harm to him, his reputation, his business and person and his calling, as well as to his family. He has also suffered financial damages.*

57.  *Defendants published numerous false, misleading slanderous, defamatory statements to severely harm and damage Plaintiff Zimmerman on their Twitter accounts.*

58.  *These false, misleading and defamatory statements were published on Twitter and disseminated on the Internet and retweeted and covered widely in the media for persons in this circuit and the entire world to see and hear.*

59.  *These false, misleading and defamatory statements were published with actual malice, as Defendants knew that they were false and misleading, and/or at a minimum acted with a reckless disregard for the truth. Defendants also had reason to know that they were false and exhibited a reckless disregard for the truth.*

60.  *Plaintiff Zimmerman has been severely harmed and damaged by these false and misleading defamatory statements because they subject him to hatred, distrust, ridicule, contempt, and disgrace.*

61.  *These statements are per se defamatory because they falsely accuse Plaintiff Zimmerman of having committed a felony crime.*

62.  *As a result of this, Plaintiff Zimmerman suffered severe reputational and other special and general damages, as set forth above."*

## VIII.  **Defamation Per Se Claim**

Buttigieg and Warren also allege that Zimmerman has not and cannot plead facts rendering plausible the allegations as to malice. Malice is an element of both the general defamation and defamation by implication claims and is presumed for claims of defamation *per se.* Rapp, 997 So. 2d at 1108; Klayman, 650 F. App'x at 749; Lawnwood Med. Ctr., 43 So. 3d at 727. A defamatory statement is made with "actual malice" if it was made with knowledge of its falsity or with a reckless

18

disregard as to whether it was true or not. Miami Herald Pub. Co. v. Ane, 458 So. 2d 239, 241 (Fla. 1984) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). The complaint alleges that Buttigieg and Warren's tweets implied that Zimmerman had killed Trayvon Martin because Zimmerman is racist or a white supremacist, or due to other like reasons, even though both were aware that he was acquitted of all charges based on evidence that he acted out of self-defense. The Court has already ruled that based on the allegations of the complaint, taken as true, Count I and Count II sufficiently plead that Buttigieg and Warren knew the falsity of what their respective tweets implied and therefore acted with malice in publishing them.

Defendants argue that the defamation *per se* claim should fail because it requires too many inferential steps to get to the conclusion that the tweets accuse him of murder. The complaint expressly states that "[t]hese statements are *per se* defamatory because they falsely accuse . . . Zimmerman of having committed a felony crime." [Amended Complaint ¶ 50]. However, the complaint also states that the "statements . . . subject him to hatred, distrust, ridicule, contempt, and disgrace." Id. ¶ 60]. As the Court noted above, defamation *per se* is not confined to statements that someone committed a crime, as statements that tend to subject a person to hatred, distrust, ridicule, contempt or disgrace can suffice. Adams, 84 So. 2d at 551.

Certainly, a statement that attributes racist and white supremacist attributes to someone could subject that person to such harm. According to the complaint, Buttigieg's tweet suggests that Trayvon Martin's death resulted from either "white supremacy, gun violence, prejudice, or fear." [Amended Complaint ¶ 10, 40].

Warren's tweet allegedly places blame for Trayvon Martin's death on "gun violence and racism." Id. at pp. 29. **The complaint therefore pleads an additional basis for defamation *per se* liability.**

## IX.   Defendants Have Given No Reason For Limited Discovery

Rules 26 to 37 of Title V of the Federal Rules of Civil Procedure (FRCP) deal with depositions and discovery. These rules guide the discovery process at the federal level. Limited Discovery in this case would serve no purpose. The Defendants have given no reason for Limited Discovery. The pulication has already occurred. Limited Discovery at this point in the proceeding would not expedite or narrow the proceeding.

## X.   Leave to Amend Rule 15 FRCP

The Plaintiff respectfully requests leave to amend again to deal with any remaining deficiencies pursuant to Rule 15 FRCP.

## CONCLUSION

For these compelling reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be denied and this case allowed to proceed to discovery forthwith. Defendants are not above the law, and they must be held to legally account for their

actions without regard to their professed elite political status.

The Defendants have no excuse for harming an innocent man by calling him, falsely, a white supremacist – a statement of fact -- and smearing him with charges that he engages in gun violence, when he was found by a jury of his peers to have acted in self-defense. This is particularly actionable when the Defendants knew of this acquittal and thus possessed the requisite actual malice. Their cynical, irresponsible and lawless intent was to gain votes.

Plaintiff respectfully requests oral argument on Defendants' non-meritorious motion which must be denied.

**<u>Certification and Closing</u>**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complain other wise complies with the requirements of Rule 11.

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 21, 2021, I filed a copy of the foregoing Notice of Appearance with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Frederick S. Wermuth, Esquire
King, Blackwll, Zehnder & Wermuth, P.A.
P.O. Box 1631
Orlando, FL 32802
fwermuth@kbzwlaw.com
Attorney for Defendants

Marc E. Elias*
Perkins Coie, LLP
700 13th St. N.W. Suite 800
Washington, D.C. 20005
MElias@perkinscoie.com

William B. Stafford*
Perkins Coie LLP
1201 Third Avenue, Suite4900
Seattle, WA 98101
Wstafford@perkinscoie.com

Respectfully submitted April 21, 2021,

By: _____

CRAIG A. SONNER, ESQUIRE
CRAIG A. SONNER, P.A.
FBN: 478946
P.O. Box 622017
Oviedo, FL 32762
E-Mail: craigsonner@earthlink.net
(407) 331-5900
(407) 331-1775
Attorney for Plaintiff