## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GEORGE ZIMMERMAN,

      Plaintiff,

v.                                 Case No: 8:20-cv-1077-CEH-CPT

PETE BUTTIGIEG and ELIZABETH WARREN,

      Defendants.

_____/

## O R D E R

      This matter comes before the Court upon Defendants' Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law [Doc. 40], Plaintiff's Opposition [Doc. 42], Defendants' Reply [Doc. 45], and Plaintiff's Reply in Opposition [Doc. 49].  Defendant argues that the Amended Complaint is a shotgun pleading, that personal jurisdiction over Defendants is lacking, and that Plaintiff fails to state a claim upon which relief can be granted.  The Court, having considered the motion and being fully advised in the premises, will **GRANT-IN-PART** Defendants' Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law.

## I.    BACKGROUND[1]

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint [Doc. 39], the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

The actions giving rise to this lawsuit occurred on February 5, 2020. [Doc. 39 ¶ 6]. That day, Defendant Pete Buttigieg, an American politician and a 2020 candidate for the Democratic Party nomination for President of the United States of America, made the following tweet:



*Id.* ¶¶ 6, 7. That same day, Elizabeth Warren, a nationally known public figure and 2020 candidate for the Democratic party nomination for President of the United States, also tweeted about Trayvon Martin. *Id.* ¶ 13. She tweeted the following statement:



*Id.* ¶ 14.

Buttigieg allegedly had 1,600,000 followers on the social media platform, Twitter, and tweeted multiple times per day in order to build political support. *Id.* ¶ 9. In only three days, his tweet about Trayvon Martin received 42,000 likes, 13,300 replies, and 6,600 retweets. 12. Warren had 3,600,000 followers. *Id.* ¶ 14. Her tweet

received 7,300 likes and 1,000 retweets in only three days. *Id.* ¶ 15. Both tweets received national media coverage, including in the state of Florida, and were read by several residents of Florida. *Id.* ¶¶ 12, 15, 7, 16.

On February 18, 2020, Plaintiff George Zimmerman filed this action against Defendants. [Doc. 1-1].[2] The Amended Complaint asserts the following claims against both Defendants: general defamation (**Count I**), defamation by implication (**Count II**), and defamation per se (**Count III**). [Doc. 39]. Zimmerman alleges that the tweets are referring to him because it is universally known that he shot Trayvon Martin. *Id.* ¶ 23. He alleges that on February 26, 2012, he discharged a single shot to stop then seventeen-year-old Trayvon Martin from assaulting him, following an incident between the two at the Retreat at Twin Lakes townhome community in Sanford, Florida, where he lived and was a member of the neighborhood watch. *Id.* ¶ 2. He was charged with second-degree murder and acquitted by a jury on July 13, 2013. *Id.* ¶ 3. He alleges that his name is 100% synonymous with Trayvon Martin and the incident that resulted in Martin's death, due to the massive publicity after the shooting, the nationwide protests demanding his arrest without cause, his 2013 trial and acquittal of all charges, and the acts of protest and violence that continue to this day in the name of Trayvon Martin. *Id.* ¶ 5.

According to the Amended Complaint, Buttigieg's tweet implied that Trayvon Martin's death was a result of "*white supremacy, gun violence, prejudice, and fear,*" all of

---

[2] The action was filed in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida, and removed by Defendants. [Doc. 1].

which the public would understand as referring only to Zimmerman, who is known to have caused Trayvon Martin's death by shooting him, even though Buttigieg knew that the 2013 trial jury acquitted Zimmerman of all charges. *Id.* ¶ 10. This disparaged Zimmerman and further subjected him to hate. *Id.* Likewise, Warren's tweet was defamatory because it characterized Martin's death as the result of gun violence, even though Warren was very knowledgeable of the facts surrounding the 2012 incident in which Trayvon Martin died and was aware that Zimmerman's act was one of self-defense and he was acquitted of all charges. *Id.* ¶¶ 16, 17. As alleged by Zimmerman, both Buttigieg and Warren acted with actual malice in sending their respective tweet. *Id.* ¶ 18. They allegedly had a preconceived plan to discredit and destroy Zimmerman as part of their political agenda to garner votes in the black community before the 2020 election, having lacked the support of African American voters. *Id.* ¶¶ 19, 20.

Defendants have moved to dismiss the Amended Complaint. [Doc. 40]. They argue that it must be dismissed as a shotgun pleading and because the Court lacks jurisdiction over them. *Id.* at p. 7. They also specifically ask the Court to require resolution of any factual dispute as to whether Florida's long-arm statute is satisfied before denying the motion to dismiss for lack of personal jurisdiction, because the Court lacks jurisdiction over Defendants if the tweets are not *about* Zimmerman. *Id.* at p. 8. Additionally, they ask the Court to revisit the findings in its February 23, 2021 Order that Zimmerman had, in the original Complaint, plausibly alleged facts to support a finding of actual malice and a claim for defamation *per se*, given the dramatically different allegations in the Amended Complaint.

5

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require a complaint to include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Similarly, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Complaints that violate either of these rules are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). When faced with a shotgun pleading, a court should strike the complaint and instruct the plaintiff to file a more definite statement. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) (collecting cases), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A court may also dismiss an action if it lacks personal jurisdiction over the defendant(s) or if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(2), (6). Personal jurisdiction "concern[s] the extent of a court's power over the parties and the fairness of requiring a party to defend itself in a foreign forum." *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 857 (11th Cir. 1988). It "represents a restriction on judicial power ... as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570, 143 L. Ed. 2d 760 (1999) (quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, (1982)). "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is

held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). A two-step analysis is required; the court must first determine whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute and then examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). A plaintiff seeking to subject a nonresident defendant to jurisdiction of the court through the long-arm statute must do more than allege facts that show a possibility of jurisdiction." *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 142 (11th Cir. 2005) (quoting *Jet Charter Serv., Inc. v. Koeck,* 907 F.2d 1110, 1112 (11th Cir.1990)). However, a defendant contesting the complaint's allegations concerning jurisdiction must present affidavits in support of his position. *Id.* (quoting *Acquadro v. Bergeron,* 851 So.2d 665, 671 (Fla.2003)). "The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris*, 843 F.2d at 492.

On a motion to dismiss for failure to state a claim, the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). It is well established that "[a] complaint must not be dismissed unless it is shown that plaintiff can prove no set of facts in support of this claim, which would entitle him to relief." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579 (11th Cir. 1986). Labels,

conclusions, and formulaic recitations of the elements of a cause of action are not sufficient to survive a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes "part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " *Gill*, 941 F.3d at 514.  A

document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) (citing *Maxcess, Inc. v. Lucent Techs., Inc.,* 433 F.3d 1337, 1340 n. 3 (11th Cir.2005)).

## III.    DISCUSSION

### a. Shotgun Pleading

The Eleventh Circuit has identified four general types of shotgun pleadings. *Weiland*, 792 F.3d at 1322–23. They include: "(1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which." *Yeyille v. Miami Dade Cty. Pub. Sch.*, 643 F. App'x 882, 884 (11th Cir. 2016) (citing *Weiland*, 792 F.3d at 1321–23). Ultimately, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323; *see also Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

Defendants argue that the initial complaint failed to separate into a different count each cause of action against each defendant and that the Amended Complaint fails in the same exact way. The Court disagrees in part with this argument. Unlike in the prior complaint, Zimmerman now alleges that Defendants "acted together and . . . in concert." [Doc. 38 ¶¶ 25, 35, 48]. The fact that defendants are accused collectively does not render the Amended Complaint deficient if it can be *fairly* read to aver that all defendants are responsible for the alleged conduct. *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Thus, asserting each claim against both Buttigieg and Warren is not improper.[3]

However, the Court agrees that other shotgun defects subject the Amended Complaint to dismissal. The tweets at issue are not the same. Yet, each count incorporates allegations with respect to both tweets. As a result, the Amended Complaint does not separate each claim for relief into a different count. *Weiland*, 792 F.3d at 1321. Moreover, "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. *See* Doc. 39 ¶¶ 24, 34, 47 ("Plaintiff Zimmerman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length."). The forms of defamation alleged by Plaintiff require proof of different elements, such

---

[3] Although Plaintiff alleges that the Defendants acted together and in concert, there is little factual support for this assertion in the Amended Complaint. The Amended complaint identifies two different tweets, which were made from two different twitter accounts by two different individuals.

that it is not proper to reallege the entirety of the preceding counts in each subsequent count. For example, even though defamation by implication and defamation *per se* do not require proof that the statement was made with knowledge or reckless disregard as to falsity, Plaintiff incorporates this element in those claims by realleging the allegations for general defamation. *Id.* ¶¶ 27, 29, 34, 37, 47, 50. Pleading claims in such form muddles the claims and is therefore unacceptable. As such, the Court will again dismiss the Amended Complaint as a shotgun pleading.

### b. Personal Jurisdiction

In assessing personal jurisdiction, the Court first considers whether personal jurisdiction exists over a nonresident defendant under Florida's long-arm statute, and, if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). In their motion, Defendants argue that "[w]hether the tweets were *about* Zimmerman is dispositive as to whether the Court has jurisdiction over Defendants under Florida law, so this factual question should, if necessary, be resolved first." [Doc. 40 at pp. at p. 21]. They also argue that exercising jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Id.* at p. 10-14. The Court will address the arguments as to the respective prong of the jurisdictional analysis.

     *i.*   *Long-arm Jurisdiction*

As to the reach of Florida's long-arm statute, it is well established that federal courts are required to construe it as would the Florida Supreme Court as it involves a question of Florida law. *Id.* The Eleventh Circuit has explained that:

> A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, *id.* § 48.193(2).

*Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352. General jurisdiction, on the other hand, exists when a defendant "is engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity." *Id.* (quoting Fla. Stat. § 48.193(2)). Jurisdiction under the long–arm statute may be triggered where there are allegations about an out-of-state defendant's electronic or written communications into Florida and the cause of action arises from those communications. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005) (citing *Wendt*

*v. Horowitz,* 822 So.2d 1252, 1260 (Fla.2002) and *Acquadro v. Bergeron,* 851 So.2d 665, 671 (Fla.2003)). "[T]he alleged tortfeasor's 'physical presence [in Florida] is not required.' " *Id.* (quoting *Wendt,* 822 So.2d at 1260).

"[A] nonresident defendant is subject to personal jurisdiction in Florida '*for any cause of action arising from … [c]ommitting a tortious act within [Florida].*' " *Louis Vuitton,* 736 F.3d at 1353 (quoting Fla. Stat. § 48.193(1)(a)(2)). "[T]he tort of defamation is committed in the place where the defamatory material is published." *Internet Sols. Corp. v. Marshall,* 39 So. 3d 1201, 1214 (Fla. 2010) (citing *Casita, L.P. v. Maplewood Equity Partners, L.P.,* 960 So.2d 854, 857 (Fla. 3d DCA 2007)). In *Internet Sols,*[4] the Florida Supreme Court explained that

> By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida. When the posting is then accessed by a third party in Florida, the material has been "published" in Florida and the poster has communicated the material "into" Florida, thereby committing the tortious act of defamation within Florida.

39 So. 3d at 1215. *See also Catalyst Pharm., Inc. v. Fullerton,* 748 F. App'x 944, 947 (11th Cir. 2018) (affirming district court's dismissal for lack of personal jurisdiction,

---

[4] This lawsuit in that case arose from an online post made by defendant about a website operated by plaintiff, an employment recruiting and internet advertising company. *Id.* at 1203. The court explained that it was necessary to review the complaint to determine whether it stated a cause of action for libel, including publication of the statement in Florida. *Id.* at 1214. Exhibits attached to the complaint indicated that several of the comments posted by third parties appeared to be from Florida.

reasoning that the complaint failed to make a showing that the statements at issue were accessed in Florida). Zimmerman has pleaded that both tweets were read by several Florida residents and has attached as exhibits, screenshots showing retweets of Defendants' tweets by individuals located in Florida. [Doc. 39 ¶¶ 7, 16; Doc. 39-1; Doc. 39-2]. As such, the Amended Complaint has sufficiently alleged publication of the tweets in Florida.

However, Defendants contend that a factual question exists as to whether the tweets were *about* Zimmerman and that this should be resolved before the Court denies the argument that personal jurisdiction is lacking. [Doc. 40 at p. 21]. They also request limited discovery on the factual question of whether "George Zimmerman's name is 100% synonymous with Trayvon Martin and the incident that resulted in [his] death," and, therefore, whether the alleged defamatory *implications* of the tweets are *about* a Florida resident. *Id.* at p. 25. Zimmerman responds that Defendants have given no reason for limited discovery and that allowing this would not expedite or narrow the proceeding.

As the Court explained in its prior order, a defendant contesting the complaint's allegations concerning jurisdiction must present affidavits in support of his position, *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, 139 F. App'x 140, 142 (11th Cir. 2005), and that "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony," *Morris*, 843 F.2d at 492. Defendants have provided no affidavits to

controvert the allegations bearing on jurisdiction and have therefore not carried their burden. *Lawson Cattle & Equip., Inc.*, 139 F. App'x at 142.

Furthermore, the Court acknowledges that the merits and jurisdiction will sometimes be intertwined, *Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1328 (11th Cir. 2018), and that parties have a qualified right to discovery when that is the case, *Am. Civ. Liberties Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017). "Where the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.' " *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 733 (11th Cir. 1982) (quoting *Chatham Condo. Ass'n v. Century Vill., Inc.,* 597 F.2d 1002, 1011 (5th Cir. 1979)). As Defendants point out, if the tweets are not about Zimmerman, the Court does not have jurisdiction over Defendants. Likewise, the claims for relief would fail. As such, personal jurisdiction and the merits are intertwined in this case. But the Amended Complaint alleges that the tweets are about Zimmerman and no affidavits contravene these allegations. Defendants' request to conduct limited discovery as to jurisdiction is denied, as it is moot. The Court notes that the parties' amended case management report [Doc. 51] has been filed and the Court's case management and scheduling order [Doc. 52] has been filed. The parties are thus able to conduct discovery without an order from the Court.

ii.   *Due Process*

The second prong requires the Court to consider whether the exercise of jurisdiction would offend "the Due Process Clause of the Fourteenth Amendment to

the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.' " *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) (same). "The Due Process Clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Thomas v. Brown*, 504 F. App'x 845, 848 (11th Cir. 2013) (quotation omitted).

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Madara*, 916 F.2d at 1516. This requirement is satisfied if the defendant has "purposefully directed" his activities at the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* (citing cases). Once this has been established, the court considers various factors in determining whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Id.* at 1517 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)). These factors include:

> the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared

16

> interest of the states in furthering fundamental substantive
> social policies.

*Id.* (citing *Burger King,* 471 U.S. at 477).

Defendants argue that "[b]ecause the Amended Complaint does not so much as allege that the tweets were directed at Florida, asserting personal jurisdiction over [them] . . . would offend the constitutional strictures of due process." [Doc. 40 at pp. 12-13]. In fact, they point out that the Amended Complaint "alleges the opposite— that the tweets were *not* directed at Florida but instead were directed at Defendants' respective millions of followers . . . ." *Id.* at p. 11.  Defendants also argue that the Due Process Clause would still require dismissal even had Zimmerman attempted to allege that the tweets were directed at Florida, but they do not explain why. *Id.* at p. 13. Zimmerman contends that due process's fair warning requirement is satisfied because Defendants purposefully directed their activities at the forum and the litigation results from the alleged injuries that arise out of or relate to those activities. [Doc. 42 at p. 9]. In reply, Defendants argue that Zimmerman's passing reference to the Due Process Clause is not a substantive response and that Zimmerman effectively concedes that he has not pleaded sufficient facts to establish that the exercise of jurisdiction would satisfy Due Process. [Doc. 45 at pp. 2-3].

Defendants tweeted about Trayvon Martin to commemorate his birthday. [Doc. 39 ¶¶ 6, 14]. In his tweet, Buttigieg posed the question: "How many 25th Birthdays have been stolen from us by white supremacy, gun violence, prejudice, and fear?" *Id.* ¶ 6. In her tweet, Warren remarked that "He should still be with us today" and that

"We need to end gun violence and racism." *Id.* ¶ 14. According to the Amended Complaint, Martin was shot and Killed by Zimmerman, following an incident at the community where Zimmerman lived in Florida. *Id.* ¶ 2. Zimmerman was charged with second-degree murder and acquitted by a jury. *Id.* ¶ 3. The Amended Complaint also alleges that "Zimmerman's name is 100% synonymous with Trayvon Martin and the incident that resulted in Martin's death," that the tweets are referring to Zimmerman, and that Defendants "had a preconceived plan to discredit and destroy him as part of their political agenda to garner votes in the black community before the 2020 election," created a false impression of him, and did so knowing the falsity of their statements or without regard to their truth. *Id.* ¶¶ 5, 16, 19, 20, 42, 52. Taking these allegations as true, and in the absence of evidence to the contrary, Defendants have "purposefully directed" their activities at the state of Florida—and towards Zimmerman—and this action results from the alleged injuries that "arise out of or relate to" those activities. *Morris*, 843 F.2d at 492 ("The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony.").

Given the allegations in the Amended Complaint, due process would not be offended by the exercise of jurisdiction over Defendants. If, as Zimmerman contends, his name is 100% synonymous with Trayvon Martin and the incident that resulted in Martin's death, the tweets are referring to him, and Defendants had a preconceived plan to discredit and destroy him as part of their political agenda, then Defendants were on fair warning that they could be subject to jurisdiction in this state for any

18

alleged injury arising from their tweets and should have foreseen being haled into court in Florida.

Moreover, the substantial justice and fair play factors weigh in favor of the exercise of jurisdiction. Defendants are national political figures so the Court does not expect that the burden in defending the lawsuit will be overwhelming; in fact, they have not alleged any. *Madara*, 916 F.2d at 1517. Additionally, because Zimmerman is a Florida citizen and alleges that the tweets giving rise to his cause of action are connected to the 2012 shooting of Trayvon Martin, which occurred in Florida, Florida has a significant interest in adjudicating the dispute and its exercise of jurisdiction would allow Zimmerman the most convenient means of obtaining relief and further the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Id.* Hence, the Court's exercise of jurisdiction would comport with due process.

### c. Sufficiency of Claims

#### i. General Defamation and Defamation by Implication

Defendants argue that the claims for general defamation and defamation by implication should be dismissed as Zimmerman has failed to sufficiently plead actual malice. [Doc. 40 at p. 14]. Specifically, Defendants contend that Zimmerman has not plausibly alleged a factual basis that would allow the jury to determine they knew their statements were false or acted recklessly. *Id.* at pp. 15-16. They further argue that even assuming the tweets imply what Zimmerman alleges, the fact that Zimmerman was acquitted of second-degree murder and manslaughter charges by a jury is immaterial

to whether they acted with actual malice because the only awareness they could have definitively gained from knowledge of Zimmerman's acquittal is that a jury of six individuals, could not conclude, *beyond a reasonable doubt*, that Zimmerman unjustifiably and intentionally caused the death of Trayvon Martin. *Id.* at pp. 16-18.

Zimmerman responds that the Amended Complaint alleges facts sufficient to give rise to a reasonable inference Defendants made their statements with knowledge of their falsity or with reckless disregard of whether the statements were false, because Defendants must have known that he did not engage in "gun violence" since he was acquitted of all charges, and he would have been convicted if he had acted out of white supremacy or racism. [Doc. 42 at p. 15]. In reply, Defendants state that there is no charge of "gun violence" under Florida law and Zimmerman could not have been acquitted of racism, white supremacy prejudice, or fear. [Doc. 45 at p. 5]. Again, they argue that the acquittal of manslaughter and second-degree murder means nothing more than that six people could not conclude beyond a reasonable doubt that Zimmerman intentionally and unjustifiably caused the death of Trayvon Martin, and that "knowledge of acquittal alone cannot raise serious reason to doubt that Zimmerman is a racist, white supremacist who engaged in gun violence," even assuming that is what was said. *Id.* at pp. 4-5. They further argue that Zimmerman does not allege that they knew any facts to doubt the veracity of their statements. *Id.*

Malice is an element of both the general defamation and defamation by implication claims. *See Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (setting forth elements of both); *Turner v. Wells*, 879 F.3d 1254, 1262, 1269 (11th Cir.

2018). A defamatory statement is made with "actual malice" if it was made with knowledge of its falsity or with a reckless disregard as to whether it was true or not. *Miami Herald Pub. Co. v. Ane*, 458 So. 2d 239, 241 (Fla. 1984) (quoting *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)).

Again, the Court must accept the allegations in the Amended Complaint as true, *Michel*, 816 F.3d at 694, and must draw all reasonable inferences in plaintiff's favor, *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). Zimmerman alleges that he discharged a single shot to stop Trayvon Martin from assaulting him. [Doc. 39 ¶ 3]. There was massive publicity after the shooting, nationwide protests demanding his arrest, a trial, and his acquittal. *Id.* ¶ 5. Both Buttigieg and Warren were knowledgeable of the facts surrounding the incident in which Martin died and knew Zimmerman was acquitted. *Id.* ¶¶ 10, 16, 18. Buttigieg then tweeted a message which implied that Martin's death was the result of "white supremacy, gun violence, prejudice, and fear." *Id.* ¶ 10. Warren tweeted a message that characterized Martin's death as the result of gun violence, even though she was aware that Zimmerman's act was one of self-dense. *Id.* ¶ 17. Taking these allegations as a whole, Zimmerman has plausibly alleged that Buttigieg and Warren knew he was acquitted of the charges resulting from Martin's death. Zimmerman has not plausibly alleged that Defendants knew or disregarded the falsity of what they inferred about him and Trayvon Martin's death in their tweets, that is, that Zimmerman is racist or a white supremacist and that Martin's death was the result of gun violence, racism, white supremacy, prejudice, or fear. As such, actual malice has not been sufficiently pleaded.

21

Further, Defendants argue that an allegation of racism or white supremacy is a matter of opinion and therefore not even actionable. [Doc. 40 at p. 20]. "[S]tatements of pure opinion are protected from defamation actions by the First Amendment." *Turner*, 879 F.3d at 1262. "Under Florida law, a defendant publishes a 'pure opinion' when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Id.* at 1362. While the Amended Complaint alleges there was massive publicity after the shooting and that acts of protest continue to this day in the name of Trayvon Martin, it is not clear that the facts underlying the conclusions as to white supremacy, racism, prejudice, and fear are available to the public. As the Court has previously noted, such a determination is best made on summary judgment.[5]

### ii. Defamation Per Se

Defendants also argue the claim for defamation *per se* should be dismissed. Statements are defamatory per se, if "when, 'considered alone without innuendo,' they contain (i) charges that a person has committed an infamous crime, or (ii) has contracted an infectious disease, or (iii) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (iv) to injure a person in his trade or profession." *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955).

---

[5] Moreover, the Court notes that only one of the cases cited by Defendants applies Florida law, which controls the outcome of this case. That case, *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1161 (S.D. Fla. 2018), does not involve an analysis of a motion to dismiss and, more importantly, does not address protections granted to "pure opinion," which is the basis for dismissal raised in the relevant argument.

"[W]ritten defamation must be construed as per se . . . without reference to anything except the words used." *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973).

As to the argument that Count III, defamation *per se*, must be dismissed because defamation by implication and defamation *per se* are mutually exclusive causes of action, the Court notes that Federal Rule of Civil Procedure 8(d) allows a plaintiff to plead in the alternative."  Fed. R. Civ. P. 8(d)(2). That rule states that "[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* Additionally, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).  "[S]eparate counts of the complaint must be read separately." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277–78 (11th Cir. 2006). As such, there mere fact that the causes of action for defamation by implication and defamation *per se* are mutually exclusive does not subject the defamation *per se* claim to dismissal.

Defendants are correct that the Amended Complaint expressly alleges that the statements are defamatory *per se* because they falsely accuse Plaintiff of having committed a felony crime. [Doc. 40 at p. 21; Doc. 39 ¶¶ 49-50]. Having reviewed the actual tweets, the Court agrees with Defendants that to get to the conclusion that Zimmerman pleads in the Amended Complaint, one must make certain inferences. Again, only the words used may be considered in deciding whether statements are defamatory *per se*. *Wolfson*, 273 So. 2d at 778; *Adams*, 84 So. 2d at 551 (stating that statements should be considered alone without innuendo). If this was the only

allegation in the Amended Complaint regarding defamation *per se*, the claim would be dismissed.

However, the Amended Complaint also alleges that "Zimmerman has been severely harmed and damaged by the[] false and misleading defamatory statements because they subject him to hatred, distrust, ridicule, contempt, and disgrace." [Doc. 39 ¶ 61]. This presents another method of establishing defamation *per se*. The Amended Complaint also alleges that Zimmerman was responsible for gun violence, prejudice, fear, and racism. *Id.* ¶¶ 49-50. In fact, these are words taken from Buttigieg's and Warren's tweets. *Id.* ¶¶ 6, 14. Though inartful, the Court agrees with Zimmerman that the Amended Complaint pleads an additional basis for liability based on defamation *per se*.

Lastly, Defendants' argument that "the *implication* that someone has racist or a white supremacist attributes is not defamatory at all, let alone defamatory *per se*" is without merit. [Doc. 40 at p. 21]. As explained above, the Court cannot determine at this stage of the proceedings whether the statements are pure opinion, and thus not defamatory, because it is not clear whether all the facts on which the statements are based are known to the public. Moreover, "statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (iv) to injure a person in his trade or profession" are defamatory *per se*, *Adams v. News-Journal Corp.*, 84 So. 2d at 551. Zimmerman alleges the tweets have just that effect.

## IV.    CONCLUSION

Because the Amended Complaint is a shotgun pleading, it is subject to dismissal. However, it alleges sufficient facts to establish jurisdiction over Defendants. As requested, Zimmerman will be given one **final opportunity** to plead claims, which comply with the Federal Rules of Civil Procedure and which state plausible claims for defamation against Defendants.

Accordingly, it is hereby **ORDERED**:

1. Defendants' Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law [Doc. 40] is **GRANTED-IN-PART**. The Amended Complaint is dismissed, without prejudice, as a shotgun pleading. Plaintiff may file a Second Amended Complaint on or before January 5, 2022, which cures the deficiencies discussed in this Order. Failure to file the amended complaint within the time provided will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on December 22, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

25